**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| MACARIO JESUS BONILLA, *Petitioner*, | No. 12-73853 |
| v. | Agency No. A090-170-253 |
| LORETTA E. LYNCH, Attorney General, *Respondent*. | ORDER AND AMENDED OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted February 12, 2016
Pasadena, California

Filed July 12, 2016
Amended October 20, 2016

Before: Marsha S. Berzon and John B. Owens, Circuit
Judges and Algenon L. Marbley,<sup>*</sup> District Judge.

Opinion by Judge Berzon

---

<sup>*</sup> The Honorable Algenon L. Marbley, District Judge for the U.S.
District Court for the Southern District of Ohio, sitting by designation.

## SUMMARY[**]

### Immigration

The panel issued an order amending its opinion and denying a petition for panel rehearing, and filed a superseding amended opinion granting in part and denying in part Macario Jesus Bonilla's petition for review from the Board of Immigration Appeals denial of his motion to reopen deportation proceedings.

The panel held that Bonilla's ineffective assistance of counsel claim did not warrant equitable tolling of the limitations period for his untimely-filed motion to reopen for adjustment of status, and denied the petition for review on the adjustment issue.

The panel held, however, that this court has authority to review the BIA's refusal to reopen *sua sponte* to the limited degree that the refusal was based on legal error, and that in this case the BIA based its decision declining to reopen sua sponte on an erroneous understanding of the legal principles concerning the relationship between prior deportation, reopening of deportation proceedings, and eligibility for INA § 212(c) relief.

The panel noted that the BIA did not address the Immigration Judge's determination that Bonilla was also ineligible for § 212(c) because he had held lawful permanent residence for fewer than seven years. The panel concluded

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

that it appeared Bonilla accrued seven years of lawful domicile at the time of his final deportation order, and that even if the BIA could not consider his lawful domicile from the time he applied for temporary resident status because he failed to submit necessary documentation, restoration of lawful permanent resident status upon reopening would result in his acquiring seven years of unrelinquished lawful domicile prior to deportation. The panel held that the BIA's statement of the law failed to account for its possible authority to grant relief in light of the changes in Bonilla's status that reopening would bring about.

Holding that the BIA's decision was based on a legally erroneous premise, the panel granted the petition, vacated, and remanded for the BIA to exercise its broad discretionary authority as to sua sponte reopening against the correct legal backdrop.

## COUNSEL

Stacy Tolchin (argued), Law Offices of Stacy Tolchin, Los Angeles, California, for Petitioner.

Aric A. Anderson (argued), Trial Attorney; Emily Ann Radford, Assistant Director; Stuart F. Delery, Assistant Attorney General; United States Department of Justice, Civil Division, Office of Immigration Litigation, Washington, D.C.; for Respondent.

## ORDER

The opinion filed on July 12, 2016, and reported at 828 F.3d 1052 is hereby amended. The superseding amended opinion will be filed concurrently with this order.

The Petition for Panel Rehearing is **DENIED**. No further petitions for rehearing or petitions for rehearing en banc will be entertained.

---

## OPINION

BERZON, Circuit Judge:

Immigration law changes over time. New statutes are enacted; agency interpretations change; new appellate and Supreme Court decisions issue. Our questions concern how those legal changes affect an individual ordered deported from the United States when, as it turns out, the law concerning the grounds for deportation, or for denial of relief from deportation, changes after the individual is ordered deported.

Here, Macario Jesus Bonilla, formerly a lawful permanent resident of the United States, was deported to El Salvador in 1996 following a misdemeanor firearms conviction. He later reentered the United States without inspection and, much later, filed a motion to reopen, his second, on the ground that his original lawyer did not properly advise him how to adjust his status after he married a United States citizen. The motion was untimely, but Bonilla argued he was entitled to equitable tolling of the limitations period.

After the Supreme Court announced a change in law that placed in question the legality of the original deportation, Bonilla supplemented his motion to reopen. The supplement asked the Board of Immigration Appeals ("BIA" or "Board") to exercise its *sua sponte* authority to reopen his deportation order to permit him to file for relief from deportation. The Board denied both Bonilla's motion and his request for *sua sponte* reopening. Bonilla now petitions for review.

We conclude that Bonilla was not entitled to equitable tolling and so deny review as to the adjustment of status issue. But, in agreement with every circuit that has squarely addressed the issue, we hold that we have authority to review refusals to reopen *sua sponte* to the limited degree that the refusal was based on legal error. Because we conclude the Board's decision in this case was based on a legally erroneous premise, we grant the petition for review, vacate the Board's denial, and remand to the Board to exercise its broad discretionary authority as to *sua sponte* reopening against the correct legal backdrop.

## I. BACKGROUND

Macario Jesus Bonilla is a native and citizen of El Salvador. He entered the United States in 1981 and became a lawful permanent resident in 1989.

In 1994, Bonilla was convicted of misdemeanor possession of a concealed firearm in a motor vehicle and placed in deportation proceedings. An Immigration Judge ("IJ") concluded that because Bonilla had been a lawful permanent resident for fewer than seven years and had been convicted of a firearms offense, he was ineligible for any form of relief under the Immigration and Nationality Act of

1950 ("INA"), including a waiver of inadmissibility under former § 212(c).**[1]** The IJ therefore ordered him deported.

Bonilla appealed the decision to the BIA, pro se. In October 1995, the Board affirmed, on the ground that the reason for Bonilla's deportation—his firearms conviction—precluded his eligibility for § 212(c) relief. The BIA did not address the IJ's determination that Bonilla was also ineligible for relief under § 212(c) because he had held lawful permanent residence for fewer than seven years.**[2]**

---

**[1]** Section 212(c), as interpreted by the BIA, "authorize[d] any permanent resident alien with 'a lawful unrelinquished domicile of seven consecutive years' to apply for a discretionary waiver from deportation." *INS v. St. Cyr*, 533 U.S. 289, 295 (2001) (citing *Matter of Silva*, 16 I. & N. Dec. 26, 30 (BIA 1976)).

**[2]** The government speculates that the reason for this omission may have been a change in law that occurred between the date of the IJ's decision and the BIA's final order. In June 1995, this court held that domicile, for the purposes of the seven-year requirement in § 212(c), is not always coincident with lawful permanent residence. *See Ortega de Robles v. INS*, 58 F.3d 1355, 1360-61 (9th Cir. 1995). Where an alien submitted a prima facie application for amnesty under 8 U.S.C. § 1255a, as Bonilla did, the period begins with the application. *Id*. By the time that the BIA adjudicated Bonilla's appeal, it would have had to consider the time from when Bonilla applied for temporary residence. Bonilla's application for temporary residence is not included in the administrative record. But in 2009, a United States Citizenship and Immigration Services decision on Bonilla's application for permission to reapply for admission after deportation recited that Bonilla had applied for temporary residence on July 20, 1987. Bonilla further contends that, by regulation, he must have submitted his application at least 18 months prior to the granting of permanent resident status and thus no later than August 28, 1987. *See* 8 C.F.R. 245a.3(a) (1989).

Bonilla married Ana Lilian Bonilla, a United States citizen, in February 1996. At the time of the marriage, the couple had an infant son, Jessie, also a United States citizen. After the marriage, a notario advised Bonilla to surrender himself and present his marriage certificate to immigration officials. Bonilla did so, and was taken to the San Pedro Detention Center.

While Bonilla was detained, his father and Ana met with and retained Manuel Rivera, an immigration attorney, who assured them he could get Bonilla out of detention and stop his deportation. Ana asked Rivera if there were any forms she or Bonilla should file; Rivera said no. On March 12, 1996, Rivera filed with the Board a motion to reopen for adjustment of status and a request for stay of deportation. He also filed an application for a stay of deportation with the Immigration and Naturalization Service ("INS").

The Board and INS denied the stay requests, and Bonilla was deported to El Salvador. Rivera then told Ana there was nothing more he could do. He never sent Bonilla or Ana any copies of the documents he filed or received on Bonilla's behalf.

Shortly thereafter, the Board denied Bonilla's motion to reopen for adjustment of status. To have his status adjusted, the Board explained, Bonilla had to (1) make an application for adjustment of status; (2) have an immigrant visa immediately available to him at the time of filing his application; and (3) be eligible to receive a visa and be admissible for permanent residence. Bonilla never filed an application for adjustment of status (Form I-485), and an immigrant visa petition (Form I-130) was never filed on his behalf. As there was no indication in the record that Bonilla

could have had an immigrant visa immediately available to him, the Board denied the motion to reopen.

Bonilla and Ana then retained another immigration attorney, Philip Abramowitz. Abramowitz advised Ana to file an immigrant visa petition on Bonilla's behalf. She did so on October 30, 1996; the petition was approved on June 2, 1997. During the course of his representation, Abramowitz never told Bonilla that the Board had denied his motion to reopen in May 1996, nor that Rivera should have filed an immigrant visa petition and an application for adjustment of status.

In May 1999, while in El Salvador, Bonilla was shot by gang members. Soon after, he fled the country and reentered the United States without inspection.

In 2002, Bonilla consulted a pro bono attorney at an immigration workshop. He explained his case and showed her all of the case-related documents he had. The attorney told Bonilla there was nothing she could do to help him. He "had[] to wait a few years before [he] could seek legal assistance to fix [his] immigration case," she said.

Bonilla then waited six years to seek further legal assistance. In 2008, Bonilla and Ana met with Eddie Bonilla (no relation) at Servicio Latino Legal Offices. Eddie Bonilla claimed to be a licensed immigration attorney but, it turned out, was not—he was a notary unlawfully practicing law. Eddie Bonilla reviewed Bonilla's documents and told Bonilla he had to wait another year before taking any action. In 2009, Bonilla returned and retained Eddie Bonilla to represent him. Eddie Bonilla filed with the Board a pro se motion to reopen or reconsider the denial of appeal. The motion was denied.

Still pursuing her husband's case, Ana consulted with Stacy Tolchin, Bonilla's current attorney, in the fall of 2011. Unlike the lawyers and faux lawyer consulted earlier, Tolchin obtained Bonilla's immigration files from this court, and informed Bonilla and Ana that the Board had denied Bonilla's first motion to reopen back in May 1996. She also advised them that an immigrant visa petition should have been filed before filing the motion to reopen, which Rivera had not told them.

On December 1, 2011, Tolchin filed a motion to reopen Bonilla's 1995 deportation order based on ineffective assistance of counsel. Shortly thereafter, the Supreme Court decided *Judulang v. Holder*, 565 U.S. __, 132 S. Ct. 476 (2011). *Judulang* disapproved a BIA practice concerning the granting of § 212(c) relief.[3] Invoking the change of law announced in *Judulang*, Tolchin filed on Bonilla's behalf a

---

[3] Before it was repealed in 1996, INA § 212(c) authorized the Attorney General to grant relief to certain excludable aliens. By its terms, § 212(c) did not apply to deportation proceedings. The Board nonetheless adopted a policy permitting aliens in deportation proceedings to apply for § 212(c) relief. *See St. Cyr*, 533 U.S. at 295-96. To determine when an alien should receive § 212(c) relief in the deportation context, the Board adopted a comparable-grounds approach—that is, it considered "whether the ground for deportation charged in a case has a close analogue in the statute's list of exclusion grounds." *Judulang*, 132 S. Ct. at 481. If so, the alien could seek § 212(c) relief. Using the comparable-grounds approach, the BIA held that § 212(c) relief was unavailable in deportation proceedings based on firearm convictions, because there was no comparable ground of excludability. *See, e.g.*, *Matter of Gabryelsky*, 20 I. & N. Dec. 750 (BIA 1993); *Matter of Montenegro*, 20 I. & N. Dec. 603 (BIA 1992). Holding that the comparable-grounds approach was arbitrary and capricious, *Judulang* overruled the BIA's previous decisions barring § 212(c) relief in deportation proceedings based on firearms convictions. 132 S. Ct. at 483.

supplement to his motion to reopen, asking the Board to exercise its *sua sponte* jurisdiction and reopen his deportation order so that he could apply for § 212(c) relief under *Judulang*.

The Board denied Bonilla's motion to reopen for adjustment of status. It held that equitable tolling of the filing period was not merited, as Bonilla did not demonstrate either due diligence or prejudice. In addition, the Board declined to exercise its *sua sponte* authority to reopen the deportation proceedings. Bonilla timely filed a petition for review.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 8 U.S.C. § 1252 to review the Board's denial of Bonilla's motion to reopen for adjustment of status. *See Avagyan v. Holder*, 646 F.3d 672, 674 (9th Cir. 2011). We review the Board's denial of a motion to reopen for abuse of discretion, but review purely legal questions de novo. *See Iturribarria v. INS*, 321 F.3d 889, 894 (9th Cir. 2003). "The BIA abuses its discretion when its decision is arbitrary, irrational, or contrary to law." *Avagyan*, 646 F.3d at 678 (citation and internal quotation marks omitted).

The Supreme Court recently left open the question "whether federal courts may review the Board's decision not to reopen removal proceedings *sua sponte*." *Kucana v. Holder*, 558 U.S. 233, 251 n.18 (2010). Before *Kucana*, we had held that, generally, we lack jurisdiction to review denials of *sua sponte* reopening. *See Ekimian v. INS*, 303 F.3d 1153, 1159 (9th Cir. 2002). But we have not specifically addressed whether we have jurisdiction to review the Board's denial of a motion to reopen *sua sponte* for the limited purpose of determining whether the Board based its decision on legal or

constitutional error. Several circuits have held that courts of appeal do have such limited jurisdiction. *See, e.g.*, *Salgado-Toribio v. Holder*, 713 F.3d 1267, 1271 (10th Cir. 2013); *Pllumi v. Attorney General*, 642 F.3d 155, 160 (3d Cir. 2011); *Mahmood v. Holder*, 570 F.3d 466, 469 (2d Cir. 2009). For reasons explained in Part III.B, *infra*, we agree with those decisions.

## III. DISCUSSION

### A.  Motion to Reopen for Adjustment of Status Based on Ineffective Assistance of Counsel

#### 1.  Ineffective Assistance of Counsel as a Basis for Equitable Tolling

Generally, a motion to reopen must be filed "within 90 days of the date of entry of a final administrative order of removal," 8 U.S.C. § 1229a(c)(7)(C)(i), and an alien is limited to one such motion. *Id.* § 1229a(c)(7)(A). But, because Bonilla's final deportation order preceded the imposition of the current time and number limitations on motions to reopen, his motion to reopen was due by September 30, 1996. *See* Executive Office for Immigration Review; Motions and Appeals in Immigration Proceedings, 61 Fed. Reg. 18900-01 (Apr. 29, 1996). Bonilla did not file the motion to reopen at issue in this case until December 1, 2011, more than fifteen years late.

Failure to meet the filing deadline is not fatal where equitable tolling is available.[4] "Ineffective assistance of counsel is one basis for equitable tolling." *Singh v. Holder*, 658 F.3d 879, 884 (9th Cir. 2011). Equitable tolling applies in ineffective assistance of counsel cases because, "[a]lthough there is no Sixth Amendment right to counsel in a deportation proceeding, the due process guarantees of the Fifth Amendment still must be afforded to an alien petitioner." *Avagyan*, 646 F.3d at 676–77 (citation omitted). Ineffective assistance of counsel in a deportation proceeding denies an alien petitioner his due process rights "if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Id.* at 677 (citation omitted). Erroneous legal advice that results in the petitioner failing to file a timely motion to reopen is such a denial of due process. *Id.* "Consequently, we 'recognize[] equitable tolling of deadlines and numerical limits on motions to reopen . . . during periods when a petitioner is prevented from filing because of [his attorney's] deception, fraud, or error, as long as the petitioner acts with due diligence in discovering the deception, fraud, or error." *Id.* (quoting *Iturribarria*, 321 F.3d at 897).

To determine whether a petitioner exercised due diligence, we consider three factors: (1) "if (and when) a reasonable person in petitioner's position would suspect the specific fraud or error underlying her motion to reopen"; (2) "whether petitioner took reasonable steps to investigate the [attorney's] suspected fraud or error, or, if petitioner is ignorant of counsel's shortcomings, whether petitioner made

---

[4] It also is not fatal where the BIA decides to reopen proceedings on its own authority, which it may do at any time. *See* 8 C.F.R. § 1003.2(a). We address Bonilla's motion to reopen *sua sponte* in Part III.B, *infra*.

reasonable efforts to pursue relief"; and (3) "when the tolling period should end; that is, when petitioner definitively learns of the harm resulting from counsel's deficiency." *Avagyan*, 646 F.3d at 679 (citations omitted). The petitioner need not "act with the maximum diligence possible—only due or reasonable diligence." *Id.* (internal quotation marks omitted). Our review of the petitioner's diligence is "fact-intensive and case-specific, assessing the reasonableness of petitioner's actions in the context of his or her particular circumstances." *Id.*

2. Review of Bonilla's Asserted Diligence

Bonilla argued in his motion to reopen for adjustment of status that the Board should reopen its 1995 decision affirming his order of deportation because his first attorney, Manuel Rivera, and the notary posing as an attorney, Eddie Bonilla, both provided ineffective assistance. Bonilla acknowledged that the motion was filed many years past the deadline for filing such motions, but contended that he had demonstrated due diligence during, and therefore was entitled to equitable tolling for, the years between 1996 and 2011.

The Board disagreed, holding, *inter alia*, that Bonilla did not act with due diligence, as there was a six year gap— between 2002 and 2008—in his pursuit of legal advice. We enforce the denial of the motion to reopen on this ground, and so do not reach the Board's other bases for denying the motion to reopen. Assuming, therefore, that Bonilla was indeed "ignorant of [his prior] counsel's shortcomings" when he consulted his present attorney in 2011, *Avagyan*, 646 F.3d at 679, the question is whether Bonilla "made reasonable efforts to pursue relief," despite that six-year lapse. *Id*.

Bonilla explained that he did not seek any legal assistance from 2002 to 2008 because he was following the 2002 advice of the pro bono attorney he consulted at an immigration workshop.[5] That attorney told him to "wait a few years." Bonilla contends that it was reasonable for him to rely on the immigration workshop attorney's advice.

Taking into account the "particular circumstances," *Avagyan*, 646 F.3d at 679, we note, first, that Bonilla did give the attorney what he thought to be the necessary information about his case and had no reason to believe her advice incorrect. But Bonilla appears to have had no meaningful or sustained relationship with that attorney; he did not provide her name, for example, nor any details about the immigration workshop, such as its sponsoring organization or location. Lacking any continuing connection to the lawyer or the sponsoring organization, he could not, and did not, follow up with her, nor she with him. Nor did Bonilla explain the basis for the attorney's recommendation to wait, perhaps because she did not offer one, or because he did not understand or remember what she said.

Most importantly, although the attorney advised Bonilla to wait "a few years" to seek further legal help, she did not advise him how long to wait. Because of the lack of any ongoing relationship, she was in no position to contact him when the appropriate time to seek relief had arrived and did not do so.

---

[5] The Board did not find that the facts alleged in Bonilla's declaration are "inherently unbelievable," so we accept them as true. *Avagyan*, 646 F.3d at 679 (quoting *Ghahremani v. Gonzales*, 498 F.3d 993, 999 (9th Cir. 2007)).

In the end, Bonilla waited *six* years to take any further action to negate the 1995 deportation order. He provides no explanation for waiting that long.

Given the exceedingly long lapse of time before seeking further legal advice, the lack of any continuing relationship or follow up with the lawyer relied upon, and the general nature of the advice offered, the BIA appropriately concluded that Bonilla did not make "reasonable efforts to pursue relief," *Avagyan*, 646 F.3d at 679, and so did not demonstrate the diligence necessary for equitable tolling.**[6]**

We deny Bonilla's petition for review as to the motion to reopen for adjustment of status.

## B. Motion to Reopen *Sua Sponte*

After the Supreme Court rejected the comparable-grounds approach in *Judulang*, *see* note 2, *supra*, Bonilla asked the Board to exercise its *sua sponte* authority to reopen his 1995 deportation order so that he could now apply for § 212(c)

---

**[6]** In his opening brief, Bonilla also maintained that it was futile to file a motion to reopen until 2010, when this court ruled unlawful a "departure bar" regulation providing that departure from the United States constituted a withdrawal of a motion to reopen made previously. *See Reyes-Torres v. Holder*, 645 F.3d 1073, 1075–76 (9th Cir. 2011); *Coyt v. Holder*, 593 F.3d 902, 906 (9th Cir. 2010). At oral argument on this appeal, Bonilla's attorney changed positions somewhat, arguing that filing would have been futile only until 2007, citing *Lin v. Gonzales*, 473 F.3d 979 (9th Cir. 2007). Or. Arg. Tr. 21:10-21:30. Leaving aside which date is correct, Bonilla did not raise this departure bar argument in any form to the BIA as a ground for granting equitable tolling. As the issue was not exhausted, we lack jurisdiction to consider it. *See Alvarado v. Holder*, 759 F.3d 1121, 1127 n.5 (9th Cir. 2014) (explaining that our court's precedent "has squarely held that issue exhaustion is a jurisdictional requirement").

relief, as *Judulang* would allow. The Board denied the request. Maintaining that the Board's denial of *sua sponte* reopening rested on an erroneous legal premise, Bonilla asks that we correct the error and vacate the Board's denial of *sua sponte* relief.

We conclude that we do have jurisdiction to review the Board's decision so as to assure that the Board made its discretionary decision on the correct understanding of the applicable legal principles. As the Board premised its decision on an erroneous understanding of the legal principles concerning the relationship between prior deportation, reopening of deportation proceedings, and eligibility for § 212(c) relief, we will grant the petition and return the case to the Board for further consideration.

1. Origins of the Board's *Sua Sponte* Reopening Authority

We begin our consideration of the jurisdictional question before us by revisiting some history of the concept of reopening.

Originally, in the immigration context, "reopening [was] a judicial creation . . . ." *Dada v. Mukasey*, 554 U.S. 1, 12 (2008) (citing federal court cases reviewing administrative decisions denying motions to reopen removal proceedings from the early 1900s). In 1958, the year the BIA was established, "the Attorney General promulgated a rule for the reopening and reconsideration of removal proceedings . . . ." *Id.* at 13 (citing 23 Fed. Reg. 9115, 9118–9119 (1958), final rule codified at 8 C.F.R. § 3.2 (1959)).

Today, the Board's authority to grant or deny a motion to reopen is still found in a regulation, 8 C.F.R. § 1003.2(a), which closely follows the 1958 version. *Dada*, 554 U.S. at 13. The current regulation provides:

> The Board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision. . . . The decision to grant or deny a motion to reopen or reconsider is within the discretion of the Board, subject to the restrictions of this section. The Board has discretion to deny a motion to reopen even if the party moving has made out a prima facie case for relief.

8 C.F.R. § 1003.2(a).

Until 1996, there was no time limit for requesting reopening. *Dada*, 554 U.S. at 13. In 1990, Congress, "fearful that deportable or excludable aliens were trying to prolong their stays in the U.S. by filing one type of discretionary relief . . . after another in immigration proceedings," ordered the Attorney General to issue regulations limiting the number of motions and setting a maximum time period within which to file them. *Id.* (citation and internal alterations omitted). Although "[t]he Attorney General found little evidence of abuse," Congress did not rescind or adjust its request. *Id.* So, in 1996, the Department of Justice issued a regulation imposing time limits and filing restrictions. *Id.* (citing Executive Office for Immigration Review; Motions and Appeals in Immigration Proceedings, 61 Fed. Reg. 18900, 18901, 18905 (1996)). Congress then codified those rules in the Illegal Immigration Reform and Responsibility Act of 1996 ("IIRIRA"). *Id.* at 14.

"IIRIRA provided the first statutory right to a motion to reopen . . . ." *Meza-Vallejos v. Holder*, 669 F.3d 920, 924 (9th Cir. 2012) (citing 8 U.S.C. § 1229a(c)(7)). With certain narrow exceptions, IIRIRA limited an alien to one motion to reopen, to be filed within 90 days of the date of entry of a final administrative order of removal. 8 U.S.C. §§ 1229a(c)(7)(A), (c)(7)(C)(i). IIRIRA thus "transform[ed] the motion to reopen from a regulatory procedure to a statutory form of relief available to the alien." *Kucana*, 558 U.S. at 249 (alteration in original) (quoting *Dada*, 554 U.S. at 14).

Notwithstanding the statutory provisions that now provide the contours of the reopening *process*, Congress never codified the regulation specifically *authorizing* the Board to grant or deny a motion to reopen or reconsider. *Kucana*, 558 U.S. at 249. The regulation codified at 8 C.F.R. § 1003.2(a) thus remains the sole enunciation of the reach of that power. *Id*. at 249–50.

Since the enactment of IIRIRA, where the timing and numerosity statutory requirements are not met and equitable tolling is unavailable, the only way an alien can reopen an adverse final order of removal is to ask the Board to exercise its *sua sponte* authority—that is, to reopen the case "on its own motion." 8 C.F.R. § 1003.2(a); *see also In re J-J-*, 21 I. & N. Dec. 976, 984, Interim Decision 3323 (BIA 1997) (discussing the Board's "limited discretionary powers under the regulations to reopen or reconsider cases on [its] own motion"). Neither the authorizing regulation, 8 C.F.R. § 1003.2(a), nor IIRIRA's statutory provisions supply a standard for the Board to apply when deciding whether to grant or deny a motion to reopen *sua sponte*.

The Board has, however, articulated some general parameters for the exercise of its *sua sponte* powers. It has cautioned that its *sua sponte* power to reopen "is not meant to be used as a general cure for filing defects or to otherwise circumvent the regulations, where enforcing them might result in hardship." *In re J-J-*, 21 I. & N. Dec. at 984. Rather, the Board "must be persuaded that the respondent's situation is truly exceptional before [it] will intervene." *In re G-D-*, 22 I. & N. Dec. 1132, 1134 (BIA 1999). For example, "sua sponte action by the Board is appropriate" where there has been "a fundamental change in the law" that represents "a departure from established principles." *Id.* at 1135. Importantly, however, the Board is not *required*—by regulation or its own decisions—to reopen proceedings *sua sponte* in exceptional situations. *Ekimian*, 303 F.3d at 1158.

2. Jurisdiction to Review the Board's Decision to Deny a Motion to Reopen *Sua Sponte*

*Ekimian* held that we ordinarily lack jurisdiction to review a Board decision denying *sua sponte* reopening, as the breadth and generality of the "truly exceptional situations" locution, *In re G-D-*, 22 I. & N. Dec. at 1134, provides no judicially manageable standard with which to do so. *Ekimian*, 303 F.3d at 1159.

The Board had denied the Ekimians' motion to reopen *sua sponte* because it did "not find sufficient grounds . . . to warrant" doing so. *Id.* at 1157. The Ekimians then petitioned for review, arguing that because the Board had stated that it could reopen proceedings *sua sponte* "in exceptional situations," *id.* (quoting *In re J-J-*, 21 I. & N. Dec. at 984), this court had "jurisdiction to review the BIA's determination

that 'exceptional situations' do not exist" for abuse of
discretion. *Id.* We rejected that argument. *Id.* at 1159.

   In doing so, we "[took] some guidance from" *Heckler v.
Chaney*, 470 U.S. 821 (1985), which considered the
provisions for judicial review of agency actions set out in the
Administrative Procedure Act. *Ekimian*, 303 F.3d at 1158. In
particular, 5 U.S.C. § 701(a)(2) provides that the chapter on
judicial review does not apply when an "agency action is
committed to agency discretion by law." *Heckler* explained
that, under § 701(a)(2), "even where Congress has not
affirmatively precluded review, review is not to be had if the
statute is drawn so that a court would have no meaningful
standard against which to judge the agency's exercise of
discretion." *Heckler*, 470 U.S. at 830. This exception to
judicial review is "very narrow," and applies "in those rare
instances where statutes are drawn in such broad terms that in
a given case there is no law to apply." *Id.* (quoting *Citizens to
Preserve Overton Park*, *Inc. v. Volpe*, 401 U.S. 402, 410
(1971)) (internal quotation marks omitted). Drawing on
*Heckler*, *Ekimian* explained that the Ekimians "[could not]
point to any statutory, regulatory, or case law definition of
'exceptional circumstances' applicable to the BIA's *sua
sponte* power under § 3.2(a)," and so rejected the argument
that "exceptional situations" was a meaningful judicial
standard for reviewing the Board's discretion. 303 F.3d at
1159. "Because we [could not] discover a sufficiently
meaningful standard against which to judge the BIA's
decision not to reopen" *sua sponte*, *Ekimian* held, "we do not
have jurisdiction to review the BIA's refusal to reopen
deportation proceedings *sua sponte*." *Id.* at 1159–60.

   *Ekimian*'s holding that the "exceptional situation"
benchmark does not provide a sufficiently meaningful

standard to permit judicial review remains good law. This court has relied on or approvingly cited *Ekimian* in fifteen published opinions.[7] But neither *Ekimian* nor any of the later cases considered the question presented here: whether appellate courts have jurisdiction to review the Board's denial of a motion to reopen *sua sponte* for the limited purpose of identifying legal or constitutional error.

Neither the immigration statute nor any regulation expressly precludes judicial review of motions to reopen, whether *sua sponte* or otherwise. Absent any such proscription, there is a "presumption favoring interpretations of statutes [to] allow judicial review of administrative action." *Kucana*, 558 U.S. at 237 (alterations in original) (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 64 (1993)); *see also Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 (1995) ("executive determinations generally are subject to judicial review"). That presumption is "well-settled," *Kucana*, 558 U.S. at 252 (quoting *Catholic Soc. Servs.*, 509 U.S. at 63), and particularly important where legal and constitutional questions are at issue.

---

[7] *See Bear Valley Mut. Water Co. v. Jewell*, 790 F.3d 977, 990 (9th Cir. 2015); *Carrillo v. Holder*, 781 F.3d 1155, 1160 n.11 (9th Cir. 2015); *Singh v. Holder*, 771 F.3d 647, 650 (9th Cir. 2014); *Mejia-Hernandez v. Holder*, 633 F.3d 818, 824 (9th Cir. 2011); *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 720 (9th Cir. 2011); *Sharma v. Holder*, 633 F.3d 865, 874 (9th Cir. 2011); *Singh v. Holder*, 658 F.3d at 884 n.6; *Diaz-Covarrubias v. Mukasey*, 551 F.3d 1114, 1117-18 (9th Cir. 2009); *Minasyan v. Mukasey*, 553 F.3d 1224, 1229 (9th Cir. 2009); *Toufighi v. Mukasey*, 538 F.3d 988, 993 n.8 (9th Cir. 2007); *Malty v. Ashcroft*, 381 F.3d 943, 945 n.1 (9th Cir. 2004); *Guzman v. INS*, 318 F.3d 911, 914 n.4 (9th Cir. 2003); *Mendez-Gutierrez v. Ashcroft*, 340 F.3d 865, 868 (9th Cir. 2003); *Ramirez-Perez v. Ashcroft*, 336 F.3d 1001, 1005 n.15 (9th Cir. 2003); *Abassi v. INS*, 305 F.3d 1028, 1032 (9th Cir. 2002).

For example, IIRIRA stripped courts of jurisdiction to review most discretionary decisions or actions of the Attorney General and Secretary of Homeland Security, the authority for which was specified under a particular statutory subchapter. *See* 8 U.S.C. § 1252(a)(2)(B)(ii). The REAL ID Act of 2005 clarified, however, that courts were not precluded from reviewing "constitutional claims or questions of law raised upon a petition for review." *Id.* § 1252(a)(2)(D). The recognition in § 1252(a)(2)(D) that legal or constitutional issues are reviewable even when the statute makes the underlying decision discretionary is reflective of a general recognition that there is no preclusion of such review if otherwise ordinarily available. Indeed, our court held that we retained jurisdiction over legal and constitutional questions raised regarding BIA discretionary decisions even before Congress so stated in the REAL ID Act, further confirming the strength of the presumption of reviewability. *See, e.g.*, *Romero-Torres v. Ashcroft*, 327 F.3d 887, 890 (9th Cir. 2003) (explaining that IIRIRA did not eliminate our jurisdiction over purely legal questions) (citing *Molina-Estrada v. INS*, 293 F.3d 1089, 1093–94 (9th Cir. 2002); *Montero-Martinez v. Ashcroft*, 277 F.3d 1137, 1144 (9th Cir. 2002)); *Torres-Aguilar v. INS*, 246 F.3d 1267, 1270–71 (9th Cir. 2001) (holding that we had jurisdiction to review a BIA decision for the denial of due process).

Our recent decision in *Singh v. Holder*, 771 F.3d 647 (9th Cir. 2014), confirms that we may review denials of *sua sponte* reopening where, unlike in *Ekimian* and similar cases, there is "law to apply" in doing so. Singh argued in his petition for review that the Board abused its discretion when it erroneously concluded that it lacked authority under 8 C.F.R. § 1003.2(a) to reopen his exclusion proceedings so that he could pursue an adjustment of status application.

*Singh*, 771 F.3d at 650. We concluded that "*Ekimian* [did] not preclude our jurisdiction." *Id.* The jurisdictional bar announced in *Ekimian*, we explained, "rests on the absence of a judicially manageable standard for us to evaluate the BIA's *exercise of discretion* in ruling on a motion to reopen." *Id.* In *Singh*, however, the BIA did not "deny[] a motion to reopen as an exercise of discretion"; it "conclude[d] that it lack[ed] the *authority* to reopen." *Id.*

*Singh* held that the Board's conclusion as to its lack of authority was contrary to plain statutory language and our court's precedents, and thus was "legal error."[8] *Id.* at 653.

---

[8] Specifically, the Board denied Singh's motion to reopen in reliance on *Matter of Yauri*, 25 I. & N. Dec. 103 (BIA 2009). *Matter of Yauri* involved an arriving alien who filed with the BIA a motion to reopen *sua sponte* her removal proceedings and then continue them indefinitely to permit her to pursue an adjustment of status application before United States Citizenship and Immigration Services ("USCIS"). 25 I. & N. Dec. at 103-04. The Board denied Yauri's motion to reopen. It noted that because Yauri was an arriving alien, USCIS, not the BIA, had jurisdiction over her adjustment application. *Id.* at 107. It then reasoned that Yauri effectively was seeking a stay of removal pending adjudication of her adjustment application; considered whether it had authority to issue a stay, rather than asking whether it had authority to reopen and continue Yauri's proceedings; and concluded that it lacked such authority. *Id.* at 108-10.

"We decline[d] to follow *Yauri*" because its interpretation of 8 C.F.R. § 1003.2(a) was "contrary to the plain language of the regulation." *Singh*, 771 F.3d at 652. Because § 1003.2(a) "plainly and unambiguously states that '[t]he Board may at *any time* open or reconsider on its motion *any case* in which it has rendered a decision," we explained, the Board in fact did have authority to reopen Singh's proceedings under § 1003.2(a). *Id.* (alteration in original). We then further explained that the Board's conclusion that it lacked the authority to reopen Singh's case was contrary to our case law holding that the Board had jurisdiction to grant a motion to reopen to provide time for USCIS to adjudicate a pending adjustment

*Singh* then granted the petition for review and remanded the case to the Board for an exercise of its discretion—that is, for a decision whether there were truly exceptional circumstances, a decision that remains unreviewable under *Ekimian*. *Id. Singh* thus limited our review to the Board's legal conclusion—that, because of legal preclusion, it could not exercise its discretion.

There is little distinction as to judicial reviewability between the situation in *Singh* and the circumstances here. Bonilla's contention, upon which we elaborate below, is that the Board misunderstood the parameters of § 212(c) relief as applied to a legal permanent resident who had been deported and, based on that misunderstanding, concluded that it would not exercise its *sua sponte* authority to reopen because it would, in the end, lack the legal authority to grant the relief requested. Just as in *Singh*, there is "law to apply" in reviewing *that* question—here, the substantive law governing § 212(c) relief when there has been a deportation of a lawful permanent resident. Reviewing that legal question will simply assure that the Board's decision whether there is a "truly exceptional situation" meriting *sua sponte* relief is made on a proper understanding of the underlying law.

We therefore conclude that, as in *Singh*, this court has jurisdiction to review Board decisions denying *sua sponte* reopening for the limited purpose of reviewing the reasoning behind the decisions for legal or constitutional error. If, upon exercise of its jurisdiction, this court concludes that the Board relied on an incorrect legal premise, it should "remand to the BIA so it may exercise its authority against the correct 'legal

---

application. *Id.* (citing *Kalilu v. Mukasey*, 548 F.3d 1215, 1218 (9th Cir. 2008)).

background.'" *Pllumi*, 642 F.3d at 160 (quoting *Mahmood*, 570 F.3d at 469). Once it does so, this court will have no jurisdiction to review the *sua sponte* decision, as *Ekimian* instructs.

In so ruling, we join three other circuits—the Second, Third, and Tenth.[9] *See Salgado-Toribio*, 713 F.3d at 1271; *Pllumi*, 642 F.3d at 160 ("[W]hen presented with a BIA decision rejecting a motion for *sua sponte* reopening, we may exercise jurisdiction to the limited extent of recognizing when the BIA has relied on an incorrect legal premise."); *Mahmood*, 570 F.3d at 469 ("[W]here the Agency may have declined to exercise its *sua sponte* authority because it misperceived the legal background and thought, incorrectly, that a reopening would necessarily fail, remand to the Agency for reconsideration in view of the correct law is appropriate."); *see also Anaya-Aguilar v. Holder*, 697 F.3d 1189, 1190 (7th Cir. 2012) ("[W]e do not mean to foreclose review of the Board's denial of a motion to reopen *sua sponte* in cases where a petitioner has a plausible constitutional or legal claim that the Board misapplied a legal or constitutional

---

[9] We note that the government's brief did not address the judicial review question we here address. And, at oral argument, the government's attorney did not answer the court's inquiry as to the propriety of the position adopted by the other circuits on the limited reviewability of denials of *sua sponte* reopening. The lawyer maintained that he was not "authorized" to take a position on the issue. Or. Arg. at 13:06-13:50. Such reticence is unacceptable. Where an important issue is directly raised by the opposing party and, on one view of the record at least, is necessary to decide to reach a reasoned conclusion, we rely on attorneys appearing in our court, including attorneys for the government, to assist us in analyzing and evaluating the issues properly before us.

standard."). To our knowledge, no circuit squarely presented with this issue has held to the contrary.[10]

### 3.   Application of Jurisdiction to the Board's Denial of Bonilla's Motion to Reopen *Sua Sponte*

We turn to the limited legal question over which we do have jurisdiction—was the Board's denial of Bonilla's motion to reopen *sua sponte* premised on an erroneous legal understanding?

Bonilla contends that the Board refused to grant his motion for *sua sponte* reopening despite the substantial change in the law worked by *Judulang* because it believed, incorrectly, that Bonilla had lost his lawful permanent resident status when he was deported and, even if reopening were granted, would not thereby regain it pending a new removal determination. As a consequence, posits Bonilla, the Board believed he could never have sufficient lawful presence to become eligible for § 212(c) relief.

We agree with Bonilla that any such conclusion about the irrevocable loss of lawful permanent resident status would be legally incorrect. Generally, an alien's lawful permanent resident status ends upon entry of a final administrative order of deportation. *Matter of Lok*, 18 I. & N. Dec. 101, 105 (BIA 1981). But if the BIA grants a motion to reopen, or a reviewing court holds that the BIA should have granted a motion to reopen, the final deportation order is vacated—that is, it is as if it never occurred. *See Nken v. Holder*, 556 U.S.

---

[10] The Eighth Circuit has expressed some skepticism about the holdings in *Pllumi* and *Mahmood*. *See Barajas-Salinas v. Holder*, 760 F.3d 905, 908 n.* (8th Cir. 2014).

418, 429 n.1 (2009); *see also Plasencia-Ayala v. Mukasey*, 516 F.3d 738, 745 (9th Cir. 2008) (explaining that "[s]everal courts of appeals, including" the Ninth Circuit, "have held that a grant of a motion to reopen vacates the final order of deportation"), *overruled on other grounds by Marmolejo-Campos v. Holder*, 558 F.3d 903 (9th Cir. 2009) (en banc). The previously terminated immigration proceedings thus are reinstated, and the alien is restored to his prior status. *C.f.* U.S. Immigration and Customs Enforcement, *Facilitating the Return to the United States of Certain Lawfully Removed Aliens* 2 (2012), https://www.ice.gov/doclib/foia/dro_polic y_memos/11061.1_current_policy_facilitating_return.pdf ("[W]hen a PFR is granted that returns a former LPR to the posture of a pre-order alien, the alien will once again, in contemplation of law, be an LPR even though removal proceedings may still be pending before EOIR on remand from the circuit court.").[11]  Here, were the Board to grant Bonilla's motion to reopen *sua sponte*, his previous deportation proceedings would be reinstated and he would be restored to the lawful permanent resident status he held then, unless and until the new proceedings close without granting relief.

---

[11] *See also Contreras-Bocanegra v. Holder*, 678 F.3d 811, 818-19 (10th Cir. 2012) (en banc) ("When the Board grants a motion to reopen, this action vacates the underlying removal order and restores the noncitizen to her prior status."); *Bronisz v. Ashcroft*, 378 F.3d 632, 637 (7th Cir. 2004) ("[T]he grant of a motion to reopen vacates the previous order of deportation or removal and reinstates the previously terminated immigration proceedings.") (drawing on *Lopez-Ruiz v. Ashcroft*, 298 F.3d 886, 887 (9th Cir. 2002)); *Henry v. INS*, 8 F.3d 426, 435 (7th Cir. 1993) ("[I]f a petition for review were granted, the alien's lawful permanent resident status would be restored and the alien would then continue to accumulate time toward the seven-year residency requirement [for § 212(c) relief].").

Under *Ortega de Robles*, it appears that Bonilla had accrued seven years of lawful domicile at the time of his final deportation order. *See* 58 F.3d 1355. And even if the Board is unable to consider Bonilla's lawful domicile from the point of his application for temporary resident status due to his failure to submit necessary documentation, restoration of Bonilla's lawful permanent resident status upon reopening would result in his acquisition of seven years of unrelinquished lawful domicile prior to his deportation. Bonilla was admitted as a lawful permanent resident on February 28, 1989. The BIA issued its final order of deportation on October 17, 1995. But Bonilla was not deported to El Salvador until March 13, 1996. Thus, if his lawful permanent resident status were restored, he would have accrued unrelinquished lawful domicile at least from February 28, 1989, and at least until March 13, 1996, a period of just over seven years.[12]

---

[12] The government asserts for the first time in its Petition for Rehearing that Bonilla has never submitted an application for relief under § 212(c), and that his eligibility for such relief would therefore require seven years of lawful domicile counting back from the date on which a new application is filed. But the underlying record shows Bonilla brought his application to the attention of both the IJ and the BIA at the original proceedings, and both considered that application.

The captions of both the IJ and BIA decisions from 1995 note "Waiver of Inadmissibility" as the "Application" at issue. Additionally, the summary of the IJ's oral decision and order (a checklist form filled in and signed by the IJ) marks that the "Respondent's application for section 212(c) waiver was granted/denied," with "denied" circled. None of the three form sentences for other types of relief were checked off. Bonilla appealed the decision, noting that although he had failed to submit a requisite application form in advance of the hearing, he had been unaware of the requirement and unable to complete it while in detention. The BIA then held that Bonilla was ineligible for § 212(c) relief on the basis of his firearms conviction and stated that it did not need to "address, therefore,

The government did not engage with the merits of the alleged legal error in its brief or at oral argument. Instead, it maintained that the Board did not make the ruling of law Bonilla attributes to it. We disagree.

Bonilla had specifically addressed whether he had the requisite time and status for § 212(c) relief in his reply brief to the Board.[13] He explained how he could satisfy the requirement, arguing that (1) "[i]f his case is reopened by the Board, then Respondent would be restored back to the status of a lawful permanent resident," and (2) counting from his lawful admission in 1989 until he was deported, he would have been lawfully domiciled for more than seven years.[14] It

_____

his contention that he was prevented from completing an application for relief . . . due to his detention."

We are satisfied that Bonilla made an application, whether written or oral, and that the IJ and BIA, so recognizing, each made determinations on its merits.

[13] At the end of its discussion of Bonilla's eligibility for § 212(c) relief, after having ruled that he had lost his permanent resident status before he had accrued seven years of lawful residency, the Board stated that Bonilla had not "addressed the effect of his deportation" on his ability to meet the unrelinquished lawful domicile requirement. The Board could not have meant that Bonilla had waived the issue of the impact of his deportation on his period as a lawful permanent resident, as he did raise and discuss it. And, as recounted in the text, the Board ruled on the merits of the matter. So the Board's comment on Bonilla's briefing was simply that Bonilla's explanation was necessarily insufficient, given the Board's understanding of the pertinent law. It is that legal understanding that we hold to be in error.

[14] Bonilla's reply brief contained a factual error: it stated he was deported on May 30, 1996, but he actually was deported on March 13,

is the Board and the government, rather, that failed to address appropriately the effect that reopening would have on the deportation order and on Bonilla's status and his eligibility for relief.

The relevant portion of the Board's decision reads:

The respondent was not eligible for either a waiver of inadmissibility or adjustment of status at the time a final order had been entered by the Board on October 17, 1995, or within the time period to file a timely motion to reopen, or on or before September 30, 1996. Under the controlling authority at that time, the respondent was not eligible for a waiver of inadmissibility under former section 212(c) of the Act due to his firearms conviction. . . . Moreover, the respondent's lawful permanent resident status terminated upon the entry of the final administrative order by the Board, and he no longer accrued lawful domicile. *Matter of Lok*, 18 I&N Dec. 101 (BIA 1981). . . .

Based on the totality of the circumstances presented in this case, and the arguments raised in the motion and its supplements, we conclude that sua sponte reopening of the respondent's deportation proceedings is inappropriate. The respondent lost his lawful permanent resident status upon this Board's

1996. The error is irrelevant to Bonilla's reasoning, and does not change the ultimate conclusion that he satisfied the seven-year requirement.

entry of a final order on October 17, 1995. *See Matter of Lok*, *supra*. The final deportation order was lawfully executed on March 13, 1996, and the respondent returned to El Salvador. His deportation "is a transformative event that fundamentally alters the alien's posture under the law." *Matter of Armendarez*, 24 I&N Dec. 646, 656 (BIA 2009). Despite the change in law set forth in *Judulang v. Holder*, *supra*, we do not find that proceedings should be reopened. The respondent has not addressed the effect of his deportation on his current eligibility for a 212(c) waiver (whether he can meet the lawful unrelinquished domicile requirement) . . . .

We are persuaded that the Board based its decision on the legal error we have identified. Quoting *Matter of Armendarez*, 24 I. & N. Dec. 646, 656 (BIA 2009), the Board characterized Bonilla's deportation as "a transformative event that fundamentally alters the alien's posture under the law." And the Board twice stated that Bonilla's lawful permanent resident status terminated upon the Board's entry of a final order of deportation on October 17, 1995, and definitively held that Bonilla therefore "no longer accrued lawful domicile." We see no way to understand these statements other than as a ruling that Bonilla had permanently lost his legal status and so could not meet the § 212(c) lawful domicile accrual requirements, even if his firearms conviction were not a barrier to relief, and even if reopening were granted on that basis.

In sum, the Board ruled on the premise that, because his deportation was a "transformative event," Bonilla's lawful permanent resident status would not be restored were the Board to reopen his deportation proceedings, and so Bonilla would not be able to establish the period of unrelinquished lawful domicile required for § 212(c) relief. That legal ruling is unfounded, as we have explained. In fact, were reopening granted because of *Judulang*, Bonilla's lawful permanent resident status would be restored as if it had never lapsed, and he would appear to have been lawfully domiciled for at least seven years before his original deportation, whether one calculates from his application for amnesty or from the beginning of his status as a legal resident alien. The Board's statement of the law fails to account for its possible authority to grant relief in light of the changes in Bonilla's status that reopening would bring about.

The Board must therefore revisit its *sua sponte* reopening decision on a proper understanding of its authority to grant Bonilla relief if reopening is granted. If, on remand, the Board again declines to exercise its *sua sponte* authority to reopen, and does so without relying on a constitutionally or legally erroneous premise, its decision will not be reviewable.

## CONCLUSION

For the foregoing reasons, we deny Bonilla's petition for review as to his motion to reopen for adjustment of status and the equitable tolling question. We exercise jurisdiction over Bonilla's petition for review as to his motion to reopen *sua sponte* for the sole purpose of considering whether the Board based its decision on a legal error. Because we conclude it did

so, we vacate and remand to the Board to exercise its discretion against the correct legal framework.

**GRANTED IN PART, VACATED, AND REMANDED, AND DENIED IN PART.**

The parties shall bear their own costs.