NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

APR 2 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SYLVIA OCAMPO-ORTIZ,<br><br>Petitioner,<br><br>v.<br><br>MERRICK B. GARLAND, Attorney General,<br><br>Respondent. | No. 18-72115<br> 19-71558<br><br>Agency No. A098-571-321<br><br>MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 1, 2021
San Francisco, California

Before: WARDLAW and BERZON, Circuit Judges, and CHEN,** District Judge.

Silvia Ocampo-Ortiz ("Ocampo") petitions for review of the Board of

Immigration Appeals' ("the Board's") denial of her motions for *sua sponte*

reopening of her removal proceedings and for reconsideration of that denial. We

have "jurisdiction to review Board decisions denying *sua sponte* reopening for the

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Edward M. Chen, United States District Judge for the Northern District of California, sitting by designation.

limited purpose of reviewing the reasoning behind the decisions for legal or constitutional error." *Bonilla v. Lynch*, 840 F.3d 575, 588 (9th Cir. 2016). Because the Board committed several legal errors in denying Ocampo's motion to reopen, we grant the petitions for review.

1. In denying Ocampo's motion to reopen, the Board stated that it was "not able to cancel her removal" because she was "no longer present in the United States," having already been removed. The Board's reasoning directly contradicts Supreme Court precedent: as long as Ocampo satisfies the "requirements of 8 U.S.C. § 1229b(a), [she] may still seek cancellation of removal even after having been removed." *Carachuri-Rosendo v. Holder*, 560 U.S. 563, 573 n.8 (2010).

At oral argument, the government suggested that the Board did not view Ocampo's removal as a barrier to reopening her proceedings so that she could seek cancellation of removal, but simply as a factor the Board could consider in its exercise of discretion. But the government's *post hoc* rationalization cannot be squared with the plain language of the Board's decision—that it was "not able" to cancel Ocampo's removal because she had already been removed. That conclusion was legal error and an invalid basis on which to deny the motion to reopen.

2. In denying Ocampo's motion for reconsideration, the Board stated that Ocampo's failure to object to the Board's characterization of her motion to reopen as "time and number barred" was "sufficient reason by itself to deny her

2

motion to reconsider." However, the Board's decision on the motion to reopen did not state that Ocampo's failure to comply with the timing and numerosity requirements for a motion to reopen was a reason for the denial. Instead, the Board noted in its recitation of the procedural background that Ocampo "has now filed an untimely and number barred motion to reopen on February 15, 2018." The Board went on to deny the motion for *sua sponte* reopening on the erroneous basis that Ocampo had already been removed. To the degree the Board's denial of reconsideration relied on Ocampo's failure to challenge a purported ground for denying *sua sponte* reopening that was not in fact a basis for that denial, the Board's denial of reconsideration was an abuse of discretion.

3.     The Board offered an additional reason for denying the motion for reconsideration—that Ocampo had not established her prima facie eligibility for cancellation of removal because she had "not demonstrated by a preponderance of the evidence that her conviction for accessory to felony perjury [was] not a crime involving moral turpitude."

Contrary to the government's argument, we have jurisdiction to review this rationale because Ocampo exhausted before the Board her contention that her conviction was not a crime involving moral turpitude. Ocampo made this argument in detail in her motion for *sua sponte* reopening. Additionally, the Board addressed the issue on the merits. We may therefore consider the issue. *See Parada v.*

*Sessions*, 902 F.3d 901, 914 (9th Cir. 2018).

The Board's determination that Ocampo had not established prima facie eligibility for cancellation of removal was legally erroneous for three reasons.

First, the Board erroneously stated that Ocampo had been convicted of "accessory to felony perjury," when in fact the statute of conviction was section 32 of the California Penal Code, accessory after the fact. Although that statute requires that a "felony [have] been committed," it does not identify any particular felony. Cal. Penal Code § 32. Nor does the record of conviction indicate the underlying offense. Moreover, even if the underlying offense *were* felony perjury, we have held that California's perjury statute, section 118 of the California Penal Code, is not categorically a crime involving moral turpitude, and "the specific offense of written perjury is not a [crime involving moral turpitude]." *Rivera v. Lynch*, 816 F.3d 1064, 1069, 1079 (9th Cir. 2016). As the underlying crime is not categorically a crime involving moral turpitude, being accessory after the fact to that crime cannot be a crime involving moral turpitude. *See Matter of Rivens*, 25 I. & N. Dec. 623, 627–28 (BIA 2011).

Second, we have held that "accessory after the fact under California Penal Code § 32 . . . is not a crime involving moral turpitude." *Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1078 (9th Cir. 2007) (en banc) (Reinhardt, J., concurring for the majority). *Navarro-Lopez* applied the categorical approach established by

4

the Supreme Court in *Taylor v. United States*, 495 U.S. 575, 599–602 (1990), and declined to apply the modified categorical approach. 503 F.3d at 1067, 1073. Later, in *Descamps v. United States*, 570 U.S. 254, 278 (2013), the Supreme Court held that a "court may use the modified approach only to determine which alternative element in a divisible statute formed the basis of the defendant's conviction." Our decision in *Navarro-Lopez* not to apply the modified categorical approach to section 32 of the California Penal Code remains valid under *Descamps*, as section 32 is not divisible. *See Almanza-Arenas v. Lynch*, 815 F.3d 469, 477–78 (9th Cir. 2016).

Third, even if Ocampo's conviction were a crime involving moral turpitude, it would not bar her from seeking cancellation of removal because it is a misdemeanor. A crime involving moral turpitude disqualifies a person from seeking cancellation of removal, either as a criminal bar or as a bar to establishing good moral character, if the crime is one "for which a sentence of one year or longer may be imposed," 8 U.S.C. § 1227(a)(2)(A)(i); *see id.* § 1182(a)(2)(A)(ii), or the sentence actually imposed was "a term of imprisonment in excess of 6 months," *id.* § 1182(a)(2)(A)(ii); *see id.* §§ 1229b(b)(1)(B) & (C), 1101(f)(3). As of 2015, the maximum sentence for a misdemeanor in California is 364 days. Cal. Penal Code § 18.5. Ocampo's misdemeanor conviction was entered in 2017, so the maximum sentence available was 364 days. Ocampo was actually sentenced to 19

days in jail and three years of probation. As a result, even if Ocampo's misdemeanor conviction were a crime involving moral turpitude, it would not bar her from seeking cancellation of removal.

Because the Board committed legal errors in denying Ocampo's motion for *sua sponte* reopening, we remand to the Board so it may "exercise its discretion against the correct legal framework." *Bonilla*, 840 F.3d at 592.

**PETITIONS GRANTED.**