**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JINGSHAN LI, | No.18-70278 |
| *Petitioner*, | Agency No. A077-094-679 |
| v. | |
| PAMELA BONDI, Attorney General, | OPINION |
| *Respondent*. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted October 17, 2023
Pasadena, California

Filed June 10, 2025

Before: A. Wallace Tashima, Daniel P. Collins, and
Gabriel P. Sanchez, Circuit Judges.

Opinion by Judge Sanchez;
Dissent by Judge Collins

# SUMMARY[*]

## Immigration

Granting Jingshan Li's petition for review of a decision of the Board of Immigration Appeals denying his motion to reopen, the panel concluded that the Board abused its discretion by failing to offer a reasoned explanation for its determination that it cannot or should not review claims of ineffective assistance of counsel before a different tribunal, and remanded.

In 2002, the Board affirmed an immigration judge's order of removal. Li's former counsel filed a petition for review in this court, but failed to file an opening brief, and the court dismissed Li's petition for failure to prosecute. In 2017, Li, represented by new counsel, filed a motion with the Board, asking it to rescind and reissue its prior decision. Li argued that his prior attorney had been ineffective by failing to file an opening brief in the Ninth Circuit.

In denying Li's motion, the Board noted that, under *Matter of Compean*, 25 I. & N. Dec. 1 (A.G. 2009) [*Compean II*], it has discretion to consider claims of ineffective assistance of counsel based on conduct that occurred after a final order of removal. However, the Board declined to consider Li's motion, stating that the claimed ineffective assistance of counsel affected Li's "case before the Ninth Circuit, a different tribunal in a different branch of the Government."

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel began by rejecting the Government's arguments that the court lacked jurisdiction to review the denial of Li's motion. Although styled as a "motion to reissue," the panel concluded that Li's motion was properly understood as a statutory motion to reopen, which courts have long had jurisdiction to review.

The Government also argued that the court lacked jurisdiction because *Compean II* recognized the Board's absolute discretion to decide whether to reopen based on alleged ineffective assistance after a final order of removal. Rejecting that contention, the panel explained that the jurisdiction-stripping provision in 8 U.S.C. § 1252(a)(2)(B) did not apply because *Compean II*'s conferral of discretion was an action by the Attorney General *only* (as opposed to Congress). As to the Government's argument that there are no meaningful standards to guide review here, the panel wrote that courts routinely review the Board's reopening decisions.

Addressing *Compean II*, as well as longstanding circuit precedent, the panel concluded that the Board's power to consider claims of ineffective assistance based on conduct of counsel that occurred after a final order of removal includes the power to review deficient performance that occurs before a different tribunal. That is especially true where, as here, a counsel's alleged deficiencies deprive a petitioner of any meaningful appellate review.

Concluding that the Board acted arbitrarily in denying Li's motion, the panel wrote that the Board's bare statement that the conduct occurred "before the Ninth Circuit, a different tribunal in a different branch of the Government," without more, shed little light on the Board's reasoning. If the Board believed it had no discretion to review ineffective

assistance claims based on conduct before a different tribunal, then the agency abused its discretion. If the Board believed that Li should have sought relief in the Ninth Circuit, it did not explain how that would comport with the requirement that such issues be raised first before the Board. Finally, if the Board harbored concerns grounded in the separation-of-powers doctrine—a topic it did not raise in its decision—it did not explain how those concerns manifest in Li's case and not any of the cases that came before it.

Dissenting, Judge Collins wrote that, although the BIA's order was terse, its explicit hesitation to address a claim of ineffective assistance that occurred in a proceeding in "a different branch of the Government" was unmistakenly a reference to separation-of-powers concerns. Further, he wrote that the majority was wrong in holding that such concerns are not implicated when an Executive Branch agency entertains an ineffective assistance claim that collaterally challenges a final judgment of an Article III court and that seeks an order from the agency that would effectively nullify that judgment.

Judge Collins also wrote that, to the extent that Li's motion separately sought reopening to pursue adjustment of status, his motion in that respect was an appeal to the BIA's *sua sponte* authority. Judge Collins would conclude that the court lacks jurisdiction to review the BIA's discretion not to reopen *sua sponte* here.

**COUNSEL**

Stephen J. McIntyre (argued), Natalie D. Camastra, and Sarah E. Higgins, O'Melveny & Myers LLP, Los Angeles, California; Caitlin Boucher, O'Melveny & Myers LLP, San Francisco, California; for Petitioner.

Anna E. Juarez (argued) and Julie M. Iversen, Senior Litigation Counsel; Arthur Rabin, Lindsay Donahue, and Lindsay Marshall, Trial Attorneys; Stephen J. Flynn, Assistant Director; Office of Immigration Litigation; Joseph H. Hunt, Assistant Attorney General; Brian M. Boynton, Principal Deputy Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

SANCHEZ, Circuit Judge:

Petitioner Jingshan Li moved to reopen proceedings before the Board of Immigration Appeals ("Board") on the basis of ineffective assistance of counsel after his former counsel failed to file an opening brief in the Ninth Circuit, causing his petition to be dismissed for failure to prosecute. The Board denied Li's motion because "the claimed ineffective assistance of counsel affected [his] case before the Ninth Circuit, a different tribunal in a different branch of the Government." We conclude the Board abused its discretion by failing to offer a reasoned explanation for its determination that it cannot or should not review claims of deficient performance by counsel before a different tribunal. Board and circuit precedent have long established that the

Board can—and has— reviewed such claims of ineffective assistance in the past. Accordingly, we grant Li's petition for review and remand for the Board to exercise its discretion in the first instance or explain the basis for its decision.

## I.

### A.

Jingshan Li, a citizen of the People's Republic China, arrived in the United States from China in May 1997 pursuant to a B-1 visa that allowed him to visit for three months in connection with a fashion business. In November 1998, Li was "paroled indefinitely" into the United States and granted work authorization in connection with a then-pending application for adjustment of status.

On September 24, 1999, Li was a passenger in a vehicle stopped at the United States-Mexico border at San Ysidro, California. Two other passengers, Yinguo Liu and Bijun Chen, presented false documents that, upon inspection, turned out to have been issued to other persons. In a subsequent interview with immigration officials, Liu claimed that he had obtained the false document from Li in Mexico and that Liu planned to compensate Li if he succeeded in entering the country. Chen likewise told immigration officials that she had obtained the false document from Li. During his interview, Li denied that he had supplied the false documents. Three days later, the Immigration and Naturalization Service ("INS") served Li with a notice to appear, charging him as being removable for knowingly assisting another alien to enter the United States in violation of law. 8 U.S.C. § 1182(a)(6)(E)(i). Li denied the charge, and at his subsequent appearances before an Immigration Judge ("IJ"), he stated that he did not have any fear of returning to China.

In January 2000, Li filed a motion to terminate the removal proceedings on the grounds that both Liu and Chen had recanted their statements incriminating Li and that, in light of these recantations, the Government could not carry its burden of proof. The IJ held an evidentiary hearing over several days in which she took evidence and testimony from Li and three INS agents present at the September 1999 border crossing. In her February 21, 2001 ruling, the IJ found that Li's testimony was "not credible" and that the initial statements of Liu and Chen to immigration officials were more reliable than their later recantations. The IJ thus found that Li was an "integral" participant in an "operation to smuggle two undocumented aliens into the United States." The IJ held that Li had not carried his burden of demonstrating admissibility and denied Li's motion to terminate. Because Li had not sought relief from removal, the IJ ordered his removal to China.

Represented by the same counsel, Li appealed his removal order. In his brief before the Board, Li argued that the IJ's adverse credibility determination and rejection of the recantations was unsupported by the record and inadequately explained and that the proceedings amounted to a "miscarriage of justice." On July 23, 2002, the Board issued an order affirming, without opinion, the IJ's ruling.

On August 20, 2002, Li's new counsel, David Su, timely filed a petition for review in this court. Upon the filing of the administrative record, we issued an order stating that Li's opening brief was due 40 days later, on April 16, 2003. *See* 8 U.S.C. § 1252(b)(3)(C). Li never filed an opening brief or requested an extension of the filing deadline. On November 26, 2003, more than seven months after the opening brief was due, we issued an order dismissing Li's petition for

failure to prosecute, stating it was "Procedurally Terminated Without Judicial Action; Default."

**B.**

More than twelve years later, Li filed an I-485 application in May 2016 to adjust his immigration status to that of a lawful permanent resident. The United States Citizenship and Immigration Services ("USCIS") informed Li in writing that it could not adjust his status because he had been ordered removed in 2002 and he "had not yet departed under that order." USCIS's written notice stated that Li's petition for review in the Ninth Circuit had been dismissed in 2003 for failure to file an opening brief and that removal proceedings against him had never been terminated. USCIS's notice stated that Li needed to file a motion to reopen his removal proceedings in order to apply for adjustment of status.

On October 2, 2017, Li, represented by new counsel, filed a motion with the Board asking it to "rescind and reissue" its earlier July 23, 2002 order. Li argued that his prior attorney Su had been ineffective in failing to file an opening brief during the Ninth Circuit proceedings. In an attached declaration, Li stated that "Su never told me the final result of the appeal to [the] 9th Circuit but kept telling me the case was still pending." Li's declaration explained that the July 2017 notice from USCIS was "the first time I learned the case was dismissed by [the] 9th Circuit." Also attached to Li's motion was a letter notifying the California State Bar of Su's failure to file the brief. Li's motion argued that he had satisfied the Board's requirements for ineffective assistance of counsel claims under *Matter of Lozada*, 19 I. &

N. Dec. 637, 639 (BIA 1988).[1]  Li also appealed to the Board's "discretionary equitable powers to serve the interests of justice."

The Board denied Li's motion to reissue on December 29, 2017.  The Board stated that it generally reissued decisions "only due to Board error or administrative problems involving the service of the Board's decisions" and found no such errors in Li's case.  The Board also rejected Li's contention that reissuance should be granted based on his counsel's alleged ineffective assistance in failing to file an opening brief in the Ninth Circuit.  Noting that, under *Matter of Compean*, 25 I. & N. Dec. 1 (A.G. 2009) [*Compean II*], the Board has discretion to "consider claims of ineffective assistance of counsel based on conduct of the counsel that occurred after a final order of removal had been entered," the Board "decline[d] to consider" Li's motion.  It explained, "[i]nasmuch as the claimed ineffective assistance of counsel affected [Li's] case before the Ninth Circuit, a different tribunal in a different branch of the Government," the Board would "decline to consider" Li's claim of "ineffective assistance of counsel against attorney Su."  In a footnote, the Board added, "[w]hile this would not affect the outcome of [Li's] motion," his motion "include[d] limited evidence of his due diligence in pursuing the ineffective assistance of counsel claim during the period of more than 14 years since the Ninth Circuit dismissed his petition for

---

[1] "In *Lozada*, the Board set forth three requirements for supporting a claim of ineffective assistance of counsel: (1) an affidavit by the alien setting forth the agreement with counsel regarding the alien's representation; (2) evidence that counsel was informed of the allegations and allowed to respond; and (3) an indication that a complaint has been lodged with the bar, or reasons explaining why not." *Lata v. INS*, 204 F.3d 1241, 1246 (9th Cir. 2000).

review."  The Board noted, for example, that Li's declaration had not specified when he had last inquired with attorney Su about his petition for review.[2]  Li timely filed a petition for review of the Board's denial of his motion.

## II.

We first address the Government's contention that we lack jurisdiction to review the Board's decision to deny Li's motion to reopen.  Although styled as a "motion to reissue," Li's motion is properly understood as a motion to reopen removal proceedings.  To grant the relief requested—the rescission of the Board's July 2002 order and its replacement with a new order—the Board must first reopen Li's proceedings so that it can then issue those orders.  Li's motion is thus properly "treated as a motion to reopen." *Coyt v. Holder*, 593 F.3d 902, 904 n.1 (9th Cir. 2010) (internal quotation marks and citation omitted).

## A.

For over a century, courts have reviewed administrative decisions denying motions to reopen removal proceedings. *See Dada v. Mukasey*, 554 U.S. 1, 12 (2008).  Motions to reopen are an "important safeguard" for "ensur[ing] a proper and lawful disposition," *id.* at 18, and Congress has consistently preserved judicial review of the denial of such motions "even as Congress [has] curtailed other aspects of courts' jurisdiction over BIA rulings." *Reyes Mata v. Lynch*, 576 U.S. 143, 148 (2015).  With the enactment of the Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA") in 1996, Congress codified the right to file a

---

[2] The Government conceded at oral argument that the Board had not relied on this factor as an independent basis to deny Li's motion to reopen.

motion to reopen by "transform[ing] the motion to reopen from a regulatory procedure to a statutory form of relief available to the alien." *Kucana v. Holder*, 558 U.S. 233, 249 (2009) (quoting *Dada*, 554 U.S. at 18). Neither IIRIRA nor the later enacted Real ID Act "disturb[ed] the unbroken line of decisions upholding court review of administrative denials of motions to reopen." *Id.* at 251.

The basis of our jurisdiction is thus long-established and straightforward: "Whenever the Board denies an alien's statutory motion to reopen a removal case, courts have jurisdiction to review its decision." *Mata*, 576 U.S. at 149. Appellate court jurisdiction to review final orders of removal under 8 U.S.C. § 1252(a)(1) necessarily encompasses "review of decisions refusing to reopen or reconsider such orders." *Id.* at 147. Accordingly, we have jurisdiction to review the Board's denial of reopening because the motion was clearly an exercise of Li's statutory right to file a motion to reopen. Neither the Board nor the Government disputes the characterization of Li's motion as a statutory motion to reopen. Indeed, the Board's order treated Li's motion as such, adding to its primary analysis that the Board "*also* decline[d]" to exercise its "sua sponte" authority to reopen (emphasis added).[3] In a footnote, the Board also discussed equitable tolling of the statutory time limit, further reflecting its treatment of Li's motion as a statutory motion.

---

[3] That the Board's order included language stating it declined to exercise its *sua sponte* authority to reopen does not affect our jurisdiction to review the decision. *Mata*, 576 U.S. at 149 (noting that a court of appeals does "not lose jurisdiction over the Board's denial of [a] motion to reopen just because the Board also declined to reopen [the] case *sua sponte*").

Li's motion also satisfied the statutory requirements for a motion to reopen other than timeliness, for which Li sought relief on the basis of equitable tolling. The motion stated the "new facts" on which it was based, namely the alleged ineffective assistance of counsel and the claimed recent discovery of the Ninth Circuit's dismissal, and the motion was supported by an accompanying declaration. *See* 8 U.S.C. §§ 1229a(c)(7)(A)-(B). It was also Li's first such motion and so it complied with the statutory limitation that an alien generally may file only "one motion to reopen proceedings under this section." *Id*. § 1229a(c)(7)(A). Although Li's motion to reopen did not satisfy the requirement that it "shall be filed within 90 days" of the final order of removal, *see id.* § 1229a(c)(7)(C)(i), the statute's timing requirement is not jurisdictional. *See Bonilla v. Lynch*, 840 F.3d 575, 582 (9th Cir. 2016) (recognizing the Board's authority to equitably toll the deadline to file a motion to reopen based on alleged ineffective assistance of counsel); *Iturribarria v. INS*, 321 F.3d 889, 897–98 (9th Cir. 2003) (same); *see also Mata*, 576 U.S. at 147 (observing that nearly every circuit has "affirmed its jurisdiction to decide an appeal . . . that seeks equitable tolling of the statutory time limit to file a motion to reopen a removal proceeding").[4]

Even if Li's motion had instead been a request for the Board to exercise its *sua sponte* authority to reopen, we would still have jurisdiction to review it. The Supreme Court has twice declined to decide whether courts have authority to review the Board's discretionary exercise of its *sua sponte*

---

[4] As *Mata* explains, whether the Board denies the motion to reopen as untimely or rejects a request for equitable tolling "makes no difference to the jurisdictional issue." 576 U.S. at 148. The reason the Board offers for denying a motion to reopen does not affect our "jurisdiction to review that decision." *Id.*

authority. *See id.* at 148; *Kucana*, 558 U.S. at 251 n.18. However, our circuit has held that we retain jurisdiction to review the Board's denial of a motion to reopen *sua sponte* "for the limited purpose of determining whether the Board based its decision on legal or constitutional error." *Bonilla*, 840 F.3d at 581. As we noted in *Bonilla*, Congress has reinforced the presumption favoring review of "constitutional claims or questions of law raised upon a petition for review" and has never limited judicial review of administrative motions to reopen. *Id.* at 586–87 (quoting the REAL ID Act, 8 U.S.C. § 1252(a)(2)(D)). The Government acknowledges this point and concedes that we have jurisdiction to review the denial of reopening premised on legal or constitutional error. Because Li's motion to reopen asserted that his counsel's ineffective performance amounted to a due process violation, we have an independent basis to review the Board's *sua sponte* denial of reopening. *See Hernandez-Ortiz v. Garland*, 32 F.4th 794, 802 (9th Cir. 2022) (explaining that counsel "caus[ing] the petitioner's application for relief to be denied on purely procedural grounds for failure to file required documents" may constitute ineffective assistance in violation of due process).

For purposes of our analysis that follows, we consider Li's motion to be a statutory motion to reopen. Accordingly, the Board's denial of the motion to reopen is within our jurisdiction to review for an abuse of discretion. *See Kucana*, 558 U.S. at 242.

## B.

Even if we have jurisdiction to review the Board's denial of a motion to reopen as a general matter, the Government argues that we lack jurisdiction to review the Board's decision here because *Compean II* recognized the Board's

absolute discretion to decide whether to reopen removal proceedings based on alleged ineffective assistance of counsel after a final order of removal has been entered. 25 I. & N. Dec. at 3. Because the Board has not defined the scope of its discretion, the Government adds, there are no meaningful standards by which an appellate court can review the Board's denial decision here. The Government is mistaken.

In *Kucana*, the Supreme Court squarely rejected the notion that the Attorney General can "shelter" the Board's "decisions from abuse-of-discretion appellate court review simply by issuing a regulation declaring those decisions 'discretionary.'" 558 U.S. at 252. The jurisdiction-stripping provision in 8 U.S.C. § 1252(a)(2)(B) bars judicial review of any Board decision "the authority for which is specified under this subchapter to be in the discretion of the Attorney General." However, *Kucana* clarified that this provision applies only to "*statutory* . . . specifications," in part because of the "longstanding exercise of judicial review of administrative rulings on reopening motions." *Id.* at 237 (emphasis added). Matters "made discretionary by the Attorney General only," on the other hand, "remain subject to judicial review." *Id.* at 253.

Here, the Government's reliance on *Compean II* as a basis to deprive this Court of jurisdiction repeats the error rejected in *Kucana*. *Compean II*'s conferral of discretion upon the Board is an action by the Attorney General only and thus "remain[s] subject to judicial review." *Id.* Moreover, if the promulgated regulation at issue in *Kucana*, 8 C.F.R. § 1003.2, could not strip appellate courts of jurisdiction, neither can a decision by the Attorney General which merely interprets the Board's authority under the same regulation. *See Matter of Compean*, 24 I. & N. Dec. 710, 727–28 (A.G.

2009) [*Compean I*], *vacated by Compean II*. Accordingly, *Compean II* presents no jurisdictional bar to our review of the Board's discretionary denial of a motion to reopen.

Further, we are not cast adrift of any meaningful standards to guide our review of the Board's decision. Appellate courts routinely review the Board's reopening decisions for abuse of discretion. *See, e.g.*, *Aliyev v. Barr*, 971 F.3d 1085, 1085–86 (9th Cir. 2020); *Agonafer v. Sessions*, 859 F.3d 1198, 1203 (9th Cir. 2017). Take *Mata* as an example. There, the petitioner's counsel failed to file a brief with the Board, leading to the dismissal of his appeal of the final order of removal. 576 U.S. at 145. On review, the Fifth Circuit held that it lacked jurisdiction to review the Board's dismissal and "declined to address the merits of Mata's equitable-tolling claim . . . on the basis of ineffective assistance of counsel." *Id.* at 146 (cleaned up). The Supreme Court reversed, holding that the Fifth Circuit "should have asserted jurisdiction . . . and addressed the equitable tolling question." *Id.* at 150.

Our own precedent contains no shortage of decisions reversing on abuse-of-discretion grounds the Board's denial of motions to reopen premised on ineffective assistance of counsel claims. *See, e.g.*, *Rosales v. Barr*, 980 F.3d 716, 720 (9th Cir. 2020); *Salazar-Gonzalez v. Lynch*, 798 F.3d 917, 921 (9th Cir. 2015); *Avagyan v. Holder*, 646 F.3d 672, 682 (9th Cir. 2011); *Maravilla v. Ashcroft*, 381 F.3d 855, 859 (9th Cir. 2004); *Fong Yang Lo v. Ashcroft*, 341 F.3d 934, 939 (9th Cir. 2003); *Rodriguez-Lariz v. INS*, 282 F.3d 1218, 1225–26 (9th Cir. 2002). There is nothing distinctive about the Board's discretion in *Compean II* which would warrant placing such exercises of discretion outside the long-settled rule that "[a]ction on motions to reopen, made discretionary

by the Attorney General only, . . . remain subject to judicial review." *Kucana*, 558 U.S. at 253.

## III.

Having confirmed our jurisdiction over this matter, we proceed to the merits.[5] In denying Li's motion to reopen, the Board declined to consider Li's ineffective assistance of counsel claim because the deficient performance "affected [Li's] case before the Ninth Circuit, a different tribunal in a different branch of the Government." Yet Board and circuit precedent have long established that the Board can—and has—reviewed such claims in the past. While the Board is not required to exercise its discretion to grant Li's motion to reopen based on ineffective assistance of counsel, it must provide a *reasoned* explanation for declining to do so. The Board failed to do so here.

## A.

Precedent firmly establishes that the Board has the discretion to consider ineffective assistance of counsel claims involving conduct before a different tribunal. We have long recognized that the Board retains "jurisdiction to review deficient performance claims concerning post-final order attorney conduct." *Singh v. Napolitano*, 649 F.3d 899, 902 (9th Cir. 2011) ("[W]e have twice stated, in unequivocal language, that the Board does have jurisdiction to hear claims such as Singh's." (first citing *Lata*, 204 F.3d at 1245–

---

[5] We disagree with Li's suggestion that the Board "required" him to show "Board error or administrative problems" in order to obtain reopening of his removal proceedings. Although the Board noted that it has "generally" exercised its authority to reissue for those reasons, the Board acknowledged under *Compean II* that it may grant reopening for ineffective assistance of counsel based on conduct that occurred after a final order of removal has been entered.

46; and then citing *Dearinger ex rel. Volkova v. Reno*, 232 F.3d 1042,1044 n.4 (9th Cir. 2000))). In *Compean II*, the Attorney General confirmed the Board's "power to consider claims of ineffective assistance of counsel based on conduct of counsel that occurred after a final order of removal had been entered." 25 I. & N. Dec. at 3. *Compean II* clarified that the Board "does have this discretion," and left it "to the Board to determine the scope of such discretion." *Id.*

As our cases demonstrate, the Board's authority to review deficient performance claims after a final order of removal has been entered includes the power to review the conduct of counsel before a federal court of appeals. *Lata* was the first such decision to recognize the Board's authority under facts strikingly similar to our own. After filing a timely petition for review, Lata's counsel failed to file an opening brief in the Ninth Circuit, causing her petition to be dismissed for failure to prosecute. 204 F.3d at 1245. After she obtained new counsel, Lata's appeal was reinstated and we addressed the merits of her claims. *Id.* She continued to press an ineffective assistance claim based solely on her former counsel's deficient performance before this court. *Id.* We stated that her claim should have first been presented to the Board, explaining that "a court of appeals is not the appropriate forum to raise questions in the first instance," and noted that the Board had established a "comprehensive procedure" for review of ineffective assistance of counsel claims in *Matter of Lozada*, 19 I. & N. Dec. 637. *Id.* at 1245–46. Notably, we made these points even though counsel's deficient conduct arose entirely before the Ninth Circuit. *Id.* at 1245. In the end, we denied Lata's ineffective assistance claim because "the very fact that we are entertaining her appeal" on the merits meant that Lata "cannot show a scintilla of prejudice." *Id.*

In *Dearinger*, Natalia Volkova sought review of the Board's denial of her claims for asylum and withholding of removal, but her counsel filed "a petition for review of the BIA decision in this court one day late." 232 F.3d at 1044. We granted the government's motion to dismiss the untimely appeal. *Id.* Two "next friends" filed a petition for writ of habeas corpus on behalf of Volkova in the district court, asserting that her counsel had provided ineffective assistance. *Id*. The district court granted the petition and ordered the Board to reissue its decision so that Volkova would have a new thirty-day period in which to file a petition for review in the court of appeals. *Id.* at 1043. We affirmed, holding that counsel's failure to comply with the deadline for filing a timely petition for review was ineffective assistance amounting to a due process violation. *Id.* at 1045. We explained that "where an alien is prevented from filing an appeal in an immigration proceeding due to counsel's error, the error deprives the alien of the appellate proceeding entirely." *Id.* (applying a "presumption of prejudice" similar to the presumption applied in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000) under the Sixth Amendment).

Perhaps the clearest example of the Board's authority to review ineffective assistance claims involving conduct before a different tribunal is *Singh v. Holder*, 658 F.3d 879 (9th Cir. 2011). After the Board denied Hoshiyar Singh's appeal and granted a thirty-day period for voluntary departure, counsel failed to request a stay of voluntary departure in order to preserve his eligibility for adjustment of status or a stay of removal concurrently with his petition

for review.[6] *Id.* at 883. While his petition was pending in the Ninth Circuit, Singh's voluntary departure period expired and he became ineligible for cancellation of removal or adjustment of status. *Id.* at 883. Two months after filing the petition for review, Singh's counsel filed a "motion to remand" in the Ninth Circuit, which we later deemed procedurally improper, untimely, and "utterly worthless." *Id.* at 883–84. The upshot of this worthless motion was that we denied Singh's request for remand and denied his petition for review on the merits in an unpublished disposition. *Id.* at 884 (citing *Singh v. Gonzales*, 225 F. App'x. 632 (9th Cir 2007)).

Singh then obtained new counsel and filed a motion to reopen before the Board. *Id.* That motion asserted that Singh was "severely prejudiced" by his former counsel's failure to seek a stay of voluntary departure and to move to reopen Singh's proceedings once his I-130 petition had been approved. *Id.* After the Board denied his motion to reopen, Singh petitioned this court for review of the Board's denial. We held that the Board abused its discretion in finding that Singh's prior counsel did not render ineffective assistance in his conduct before the Board and the Ninth Circuit. *Id.* at 885–86. We emphasized, for example, that former counsel's "decision to file a motion to remand with the Ninth Circuit instead of filing for a stay of voluntary departure" or pursuing other avenues of relief could not be deemed tactical

---

[6] While Singh's appeal to the Board was pending, he married a naturalized U.S. citizen and paid his counsel to file a visa petition and an application for adjustment of status. *Singh*, 658 F.3d at 883. An alien who is permitted to depart voluntarily and fails to do so within the specified time period is "'ineligible, for a period of ten years' for relief including cancellation of removal and adjustment of status." *Id.* (quoting 8 U.S.C. § 1229c(d)(1)(B)).

because "the motion to remand was worthless: the Ninth Circuit has no authority to grant such a motion." *Id.* at 886.

As the foregoing authorities make clear, the Board's "power to consider claims of ineffective assistance of counsel based on conduct of counsel that occurred after a final order of removal had been entered" includes the power to review deficient performance that occurs before a different tribunal. *Compean II*, 25 I. & N. Dec. at 3. That is especially true where, as here, a counsel's alleged deficiencies deprive an immigrant petitioner of any meaningful appellate review of his or her claims. *See Dearinger*, 232 F.3d at 1045.

## B.

Given this longstanding precedent, the Board acted arbitrarily when it denied Li's motion to reopen on the sole basis that Li's claimed ineffective assistance occurred before a "different tribunal." An agency acts arbitrarily when it fails to offer any reasoned explanation for its determination. *See Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221–22 (2016).

"While the BIA 'does not have to write an exegesis on every contention,'" we require it "to 'consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted.'" *Agonafer*, 859 F.3d at 1206–07 (citation omitted). The Board's bare statement that the alleged conduct occurred "before the Ninth Circuit, a different tribunal in a different branch of the Government," without more, sheds no light on its reasons for declining to review Li's ineffective assistance claim.

If the Board believed it had no discretion to review ineffective assistance claims based on conduct before a different tribunal, then the agency abused its discretion. *See Singh v. Holder*, 771 F.3d 647, 653 (9th Cir. 2014) (holding that the Board's erroneous determination that it lacked the authority to grant petitioner's motion was an abuse of discretion). If the Board instead believed that Li should have sought relief in the Ninth Circuit after the petition had been dismissed, it does not explain how that would comport with its own procedural requirements under *Matter of Lozada*, which insists upon such issues being raised before the Board in the first instance. *See supra* n.1; *see also Compean II*, 25 I. & N. Dec. at 2 (reinstating *Lozada* procedural framework).

Finally, if the Board harbored concerns grounded in the separation-of-powers doctrine—a topic it did not raise in its decision—it does not explain how those concerns manifest in Li's case and not any of the cases that came before it. The dissent accuses us of requiring the Board to invoke the magic words "separation-of-powers" in its decision. Dissent at 31. But it is not merely the Board's failure to mention the doctrine; it is its failure to provide a *reasoned* explanation why an attorney's failure to file an opening brief before the Ninth Circuit should implicate separation-of-powers concerns when the exact same thing happened in *Lata* and we explained that the petitioner should have first pursued relief with the Board.[7] *See supra* 17.

---

[7] The dissent dismisses *Lata's* discussion of the exhaustion requirements under *Matter of Lozada* as dicta, but it arguably is not. *Lata* faulted petitioner for not first filing her motion with the Board and then concluded that she could not establish prejudice in any event. *Lata*, 204 F.3d at 1245–46. *See Barapind v. Enomoto*, 400 F.3d 744, 750–51 (9th

The dissent surmises that Li's motion to reopen may have been viewed by the Board as "implicat[ing] the 233-year-old separation-of-powers principle that Executive Branch officials cannot review and set aside the decisions of Article III courts."  Dissent at 34 (citing, *inter alia*, *Plaut v. Spendthrift Farm*, *Inc.*, 514 U.S. 211, 218 (1995) and *Hayburn's Case*, 2 U.S. 408 (1792)).  But the Board did not mention the separation-of-powers doctrine at all, much less cite to *Hayburn's Case* or any other Supreme Court decision cited by the dissent.  The dissent overlooks a fundamental principle of administrative agency review: "It is not the role of the courts to speculate on reasons that might have supported an agency's decision."  *Encino Motorcars*, 579 U.S. at 224 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)); *see also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("We may not supply a reasoned basis for the agency's action that the agency itself has not given."); *Garland v. Ming Dai*, 593 U.S. 357, 369 (2021) ("[R]eviewing courts remain bound by traditional administrative law principles, including the rule that judges generally must assess the lawfulness of an agency's action in light of the explanations the agency offered for it rather than any *ex post* rationales a court can devise.").

---

Cir. 2005) (en banc) (per curiam) (explaining that an issue "presented for review" and "address[ed]" and "decided" on the merits is not dicta). Even if the discussion were dicta, *Lata* makes clear that a petitioner *can* present ineffective assistance claims to the Board concerning conduct before a different tribunal, and the Board *can* adjudicate those claims.  If the Board's review of such claims raised separation-of-powers concerns, one would expect our court to have addressed a concern of constitutional magnitude.

In any event, the dissent's *ex post* rationale for the Board's action does not hold water.  The dissent contends that the Board's review of Li's ineffective assistance claim "necessarily asked that agency to entertain a collateral attack against the Ninth Circuit's judgment dismissing Li's appeal for failure to prosecute."  Dissent at 34.  Tellingly, the dissent cites *no* case for the proposition that a claim based on his former counsel's failure to file an opening brief in the Ninth Circuit would amount to a collateral attack on a judgment by this court.

Li's request for the Board to consider his attorney's failure to file an opening brief before the Ninth Circuit is not an invitation to "collaterally attack" the Ninth Circuit's 2003 procedural order dismissing Li's appeal.  Rather, Li's motion asks the Board to examine whether his *counsel's* performance fell below an objectively reasonable standard of care and whether that deficient performance "deprive[d] [Li] of the appellate proceeding entirely," *Dearinger*, 232 F.3d at 1045, or otherwise caused him prejudice, *Singh*, 658 F.3d at 885.

We have often described a "collateral attack" as an indirect challenge to the *merits*-based determination of another proceeding or tribunal.  For example, we have stated that "the collateral attack doctrine prevents litigants from relitigat[ing] the *merits* of . . . previous administrative proceedings." *Ctr. for Biological Diversity v. EPA*, 847 F.3d 1075, 1092 (9th Cir. 2017) (emphasis added) (quoting *Americopters, LLC v. FAA*, 441 F.3d 726, 736 (9th Cir. 2006)).  In *Tur v. FAA*, we held that a party's claim for damages against Federal Aviation Administration officials presented a "collateral challenge to the *merits* of his previous adjudication" before the agency.  104 F.3d 290, 292 (9th Cir. 1997) (emphasis added); *see also Americopters*, 441 F.3d at

737 (stating that "the 'collateral attack' doctrine [serves] to prevent plaintiffs from using constitutional tort claims to *re-litigate* previous administrative hearings" or "to evade administrative procedures" (emphasis added) (citations omitted)).

The Board's consideration of Li's motion to reopen would not re-litigate the merits of Li's original petition for review because this court never addressed or adjudicated the merits of Li's claims.  Our November 2003 order dismissed Li's case "for failure to prosecute" under Ninth Circuit Rule 42-1, noting that the appeal was "Procedurally Terminated Without Judicial Action; Default."  *See* Ninth Cir. R. 42-1 ("When an appellant fails to . . . file a timely brief . . . an order may be entered by the clerk dismissing the appeal.").  Our termination "without judicial action" rested on procedural default and did not reach the merits of Li's petition.

Our dissenting colleague contends that our conclusion is contradicted by *Plaut*, which observed that "[t]he rules of finality . . . treat a dismissal on statute-of-limitations grounds the same way they treat a dismissal . . . for failure to prosecute: as a judgment on the merits."  514 U.S. at 228 (citing Fed. R. Civ. P. 41(b)).  The dissent's reliance on *Plaut* is misplaced.  In *Plaut*, the Supreme Court held that Congress' retroactive modification to the statute of limitations under the Securities Exchange Act contravened separation-of-powers principles by requiring federal courts to reopen prior judgments that had been made final.  *Id*. at 213.  "The separation-of-powers violation," *Plaut* explained, lies in "depriving judicial judgments of the conclusive effect that they had when they were announced."  *Id*. at 228.  Li's case presents no congressional or executive interference in

the Ninth Circuit's 2003 judgment dismissing his petition for failure to prosecute.

The dissent overreads *Plaut*'s passing reference to the finality of claims dismissed for failure to prosecute—which was the only time *Plaut* mentioned this point in its entire decision. *Id.* *Plaut's* citation to Rule 41(b) reflects a more nuanced understanding than what the dissent describes. *See id.* While an involuntary dismissal for failure to prosecute may constitute an adjudication on the merits, *see* Fed. R. Civ. P. 41(b), the rule provides for certain exceptions. Rule 41(b) states that a dismissal for failure to prosecute operates as an adjudication on the merits "[*u*]*nless the dismissal order states otherwise*." *Id.* (emphasis added). Here, this court's dismissal order did exactly that by specifying that Li's appeal was "Procedurally Terminated *Without* Judicial Action."**[8]**

Regardless, even if our prior dismissal of Li's petition had been an adjudication on the merits, it still does not explain why the Board would be concerned about separation of powers. Indeed, in *Singh v. Holder*, the Board entertained

---

[8] Rule 41(b) also provides that a dismissal "for lack of jurisdiction" is not an adjudication on the merits. Fed. R. Civ. P. 41(b). "The Supreme Court has given a broad reading to the jurisdiction exception set forth in Rule 41(b)." *Marin v. HEW, Health Care Fin. Agency*, 769 F.2d 590, 593 (9th Cir. 1985) (citing *Costello v. United States*, 365 U.S. 265, 285 (1961)). The jurisdiction exception encompasses not only "'fundamental jurisdictional defects which render a judgment void and subject to collateral attack'" but also "'dismissals which are based on a plaintiff's failure to comply with a precondition requisite to the [c]ourt's going forward to determine the merits of [the] substantive claim.'" *Id.* (quoting *Costello*, 365 U.S. at 285). The point of discussing these exceptions is that *Plaut* does not undermine our conclusion that the 2003 dismissal of Li's petition based on procedural default was not an adjudication on the merits.

a motion to reopen by the petitioner after we had denied his petition on the merits in an unpublished decision.  *See* 658 F.3d at 884–85.  As previously discussed, we held that the Board abused its discretion when it denied Singh's motion to reopen based on his counsel's deficient performance before the Board *and* the Ninth Circuit.  *Id.* at 885.  And we did so without any handwringing over the separation-of-powers doctrine.  *See id.* at 885–88.

In the end, the Board's ability to grant relief here is no different than in *Dearinger*, in which the Board was directed to reissue its order of removal to allow Volkova a new thirty-day period in which to file a petition for review in the Ninth Circuit to remedy her counsel's deficient performance.  232 F.3d at 1043.  The dissent makes much of the fact that counsel's ineffectiveness in *Dearinger* caused a "failure even to *trigger* any judicial proceedings," but that distinction is immaterial.  Dissent at 41.  Whether counsel fails to file a timely petition for review in the circuit court and the petition is dismissed as untimely, or fails to file an opening brief in the circuit court and the petition is dismissed for failure to prosecute, the result is the same—counsel's deficient performance forecloses any meaningful appellate review of their client's claims on the merits.[9]

---

[9] The dissent finds *Dearinger* distinguishable because a presumption of prejudice was applied in that case and no such presumption would be applicable here.  Even if a presumption of prejudice would not apply for the misconduct alleged here, that does not alter the fact that the Board has the authority to consider whether counsel's deficient performance before the Ninth Circuit prejudiced his or her client.  *See Lata*, 204 F.3d at 1246 (examining whether counsel's ineffective assistance was prejudicial); *Singh*, 658 F.3d at 887 (same).

***

Board and circuit precedent clearly establish the Board's authority to review ineffective assistance of counsel claims involving conduct before a different tribunal. *See Lata*, 204 F.3d at 1245–46; *Dearinger*, 232 F.3d at 1044; *Singh*, 658 F.3d at 885. In the absence of a reasoned analysis from the Board, we do not know why Li's case might differ from the cases that came before his. In the end, "[w]hatever potential reasons the [Board] might have given, the agency in fact gave almost no reasons at all," and so the Board's "conclusory statements do not suffice to explain its decision." *Encino Motorcars*, 579 U.S. at 224. Accordingly, we GRANT the petition for review and REMAND to the Board for further proceedings consistent with this opinion.[10] Costs are awarded to Petitioner.

COLLINS, Circuit Judge, dissenting:

In 2002, the Board of Immigration Appeals ("BIA") upheld an Immigration Judge's order directing Jingshan Li's removal to the People's Republic of China, and Li then timely filed a petition for review in this court. But his attorney, David Su, subsequently failed to file an opening brief or to request an extension, and this court dismissed Li's petition for failure to prosecute, as expressly required by § 242(b)(3)(C) of the Immigration and Nationality Act ("INA"). *See* 8 U.S.C. § 1252(b)(3)(C) ("If an alien fails to file a brief within the time provided in this paragraph, the

---

[10] On remand, the Board may address, if it deems appropriate, the equitable tolling arguments raised in Li's motion to reopen. *See supra* 9-10, 10 n.2. We express no opinion as to the merits of these arguments.

court shall dismiss the appeal unless a manifest injustice would result."). Fifteen years later, Li filed a motion to reopen in the BIA, asking it to reissue its 2002 decision so that Li could file a new timely petition for review in this court. The asserted ground for this motion was that his counsel's failure to file a merits brief in this court constituted ineffective assistance of counsel. The BIA recognized that it had discretion to reopen Li's removal proceedings, but it declined to do so, because the alleged ineffective assistance had occurred entirely during a proceeding in the Ninth Circuit, "a different tribunal in a different branch of the Government," after Li's timely petition for review had been filed.

The majority holds that the BIA did not sufficiently make clear why it was declining to consider the merits of Li's ineffective assistance claim, but the majority also alternatively holds that, if the asserted ground rested on separation-of-powers concerns, then the BIA erred. *See* Opin. at 21–26. The majority is wrong on both counts. Although the BIA's order was terse, its explicit hesitation to address a claim of ineffective assistance that occurred in a proceeding in "a *different branch* of the Government" is unmistakably a reference to separation-of-powers concerns. More importantly, the majority is quite wrong in holding that an Executive Branch agency may entertain an ineffective assistance claim that collaterally challenges a final judgment of an Article III court and that seeks an order from the agency that would effectively nullify that judgment. The majority holds that, because this court's judgment rested solely on a failure to prosecute the appeal, rather than on an adjudication of the merits, allowing an Executive agency to effectively nullify that judgment would not violate the separation of powers. *See* Opin. at 23–25. That conclusion is directly

contrary to Supreme Court authority expressly holding that separation-of-powers limitations on challenging judicial judgments apply even when those judgments are based on a dismissal "for failure to prosecute." *See Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 228 (1995).

Accordingly, the BIA did not abuse its discretion in relying on separation-of-powers concerns in declining to reopen Li's case. And to the extent that Li's petition challenges the BIA's denial of *sua sponte* reopening, we lack jurisdiction to review that decision. I therefore respectfully dissent.

# I

Without embracing all of its reasoning, I agree with the majority's ultimate conclusion that, to the extent that Li's motion asking the BIA to reopen his proceedings and to reissue its 2002 decision was based on counsel's alleged ineffective assistance, that motion was a statutory motion to reopen subject to the strictures of INA § 240(c)(7).[1] *See* 8 U.S.C. § 1229a(c)(7). And because that motion was statutory, we have jurisdiction to review the BIA's denial of it under INA § 242, 8 U.S.C. § 1252. *See Kucana v. Holder*, 558 U.S. 233, 249–50 (2010). *Kucana* instructs us, however, to "employ[] a deferential, abuse-of-discretion standard of review" in assessing the BIA's exercise of its "broad discretion" over such a statutory motion to reopen. *Id*. at 242 (simplified). Under that standard, we "may grant relief only if the BIA acted 'arbitrarily, irrationally, or contrary to law.'" *Lopez-Vasquez v. Holder*, 706 F.3d 1072, 1078 (9th Cir.

---

[1] As noted below, however, I disagree with the majority's conclusion that we have jurisdiction over Li's motion to the extent that it sought *sua sponte* reopening. *See infra* section IV.

2013) (citation omitted).  As I shall explain, I would hold that the BIA did not abuse its discretion in denying Li's statutory motion.**2**

## II

I disagree with the majority's conclusion that the BIA did not adequately explain the grounds for its decision denying Li's motion to reopen.

In addressing Li's motion to reopen based on ineffective assistance of counsel, the BIA expressly acknowledged that, under *Matter of Compean*, 25 I. & N. Dec. 1 (A.G. 2009), it had discretion to "consider claims of ineffective assistance of counsel based on conduct of the counsel that occurred after a final order of removal had been entered."  The BIA, however, declined to exercise that discretion in Li's favor.  As the BIA's order explained, "[i]nasmuch as the claimed ineffective assistance of counsel affected [Li's] case before the Ninth Circuit, a different tribunal in a different branch of the Government," the BIA "decline[d] to consider" Li's claim of "ineffective assistance of counsel against attorney Su."**3**  This stated hesitation to grant reopening based on

---

[2] I also agree with the majority's bottom-line conclusion that there is nothing distinctive about the particular category of discretion discussed in *Matter of Compean*, 25 I. & N. Dec. 1 (A.G. 2009) (addressing the BIA's discretion with respect to ineffective assistance claims occurring after entry of a final removal order), that would warrant placing such exercises of discretion outside the long-settled rule that "[a]ction on motions to reopen, made discretionary by the Attorney General only, . . . remain[s] subject to judicial review."  *Kucana*, 558 U.S. at 253.

[3] In a footnote, the BIA also stated that, "[w]hile this would not affect the outcome of [Li's] motion," his motion "include[d] limited evidence of his due diligence in pursuing the ineffective assistance of counsel

ineffective assistance that occurred entirely before a "different tribunal *in a different branch* of the Government" is unmistakably a reference to separation-of-powers concerns.[4]

The majority's contrary view that the BIA "did not raise" or "mention" these concerns, *see* Opin. at 21–22, rests on the untenable premise that the BIA needed to use the magic words "separation-of-powers" in order to invoke such concerns. *See Garland v. Ming Dai*, 593 U.S. 357, 369 (2021) (expressly rejecting the view that the rule of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), which limits reviewing courts to only the grounds offered by the agency, "means the BIA must follow a particular formula or incant 'magic words'"). "To the contrary, a reviewing court must 'uphold' even 'a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Id*. (citation omitted); *see also Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016). In the context of this case, the BIA's express hesitation to review a decision of a "different tribunal in a different branch of the Government" is plainly a reference to the separation of powers, which, after all, involves the "division of functions among the different branches and

---

claim during the period of more than 14 years since the Ninth Circuit dismissed his petition for review." In particular, Li's motion did not "specify . . . the last time he inquired with attorney Su about his petition for review." The Government, however, has affirmatively conceded that the BIA's footnote did not constitute a ruling on whether Li was entitled to equitable tolling and that the footnote does not provide an alternative ground for upholding the BIA's decision.

[4] I agree with the majority that Li is wrong in contending that the BIA held that reopening was limited to situations in which there was error by the BIA or "administrative problems" involving the service of the Board's decision. *See* Opin. at 16 n.5.

levels of Government," *United States v. United States Dist. Ct. for the E. Dist. of Mich.*, 407 U.S. 297, 317 (1972). Against this backdrop, the majority's professed cluelessness as to the grounds for the BIA's decision is unfathomable.

### III

In my view, the BIA acted well within its discretion in invoking separation-of-powers concerns in declining to consider the merits of Li's ineffective assistance claim.

### A

I think it is important to emphasize, at the outset, that the BIA did not hold that considering Li's ineffective assistance claim on the merits *would violate* the separation of powers. Instead, in exercising its "broad discretion" over motions to reopen, *Kucana*, 558 U.S. at 242 (citation omitted), the BIA invoked separation-of-powers concerns as a reason for declining to exercise its discretionary authority in Li's favor.[5]   There is nothing unreasonable or arbitrary about exercising one's discretion so as to avoid a potential constitutional concern.  On the contrary, such concerns have long been recognized as providing appropriate grounds for caution in a wide variety of contexts.  *See, e.g.*, *Hernandez v. Mesa*, 589 U.S. 93, 96 (2020) (noting that "caution" should be exercised before extending the judge-made "*Bivens*" damages remedy to new contexts); *Kucana*, 558 U.S. at 831 (stating that "[s]eparation-of-powers concerns . . . cautioned . . . against" a broad reading of the INA's limitations on judicial review); *Mathews v. Diaz*, 426 U.S. 67, 81–82 (1976) (holding that, in view of the broad authority of

---

[5] The majority is therefore wrong in suggesting that the BIA's decision rested on the conclusion that it lacked any discretion to consider Li's motion.  *See* Opin. at 21.

Congress over immigration, courts should exercise caution in adopting "[a]ny rule of constitutional law that would inhibit the flexibility of the political branches of government to respond to changing world conditions"). As I shall explain, the BIA reasonably concluded that such concerns were present here, and the agency therefore acted well within its wide discretion in denying Li's motion on that basis.

In assessing the extent to which Li's motion to reopen raised separation-of-powers concerns, I think it is critical to note that Li did not allege any ineffective assistance in *getting* his case from the BIA into the Ninth Circuit. That latter situation would involve ineffectiveness in invoking the jurisdiction of a federal court of appeals rather than in handling the merits of a proceeding as to which the jurisdiction of the court of appeals has already been successfully invoked and as to which that court ultimately issues a judgment and mandate. Here, there was no ineffective assistance in instituting the proceedings, because, as the BIA noted, Li "filed a timely petition for review through [his] attorney."

Li's motion to reopen in the BIA instead contended that the Ninth Circuit's dismissal order was the result of the ineffective assistance of his counsel in handling the appeal *within* the Ninth Circuit. Li's argument was that the failure to file an opening brief was outside the range of professional competence and was prejudicial because it resulted in the dismissal of his appeal. *See Martinez-Hernandez v. Holder*, 778 F.3d 1086, 1088 (9th Cir. 2015) ("A claim of ineffective assistance of counsel requires a showing of inadequate performance and prejudice."). His proposed remedy for that ineffective assistance, which occurred entirely within the Ninth Circuit and which produced an adverse judgment and mandate from this court, was to effectively vitiate that

judgment by having the BIA reissue its 2002 order, so that Li could then secure a do-over in the Ninth Circuit. As a result, Li's motion to reopen before the BIA necessarily asked that agency to entertain a collateral attack against the Ninth Circuit's judgment dismissing Li's appeal for failure to prosecute.[6]  *See Wall v. Kholi*, 562 U.S. 545, 552 (2011) ("A 'collateral attack' is '[a]n attack on a judgment in a proceeding other than a direct appeal.'" (quoting *Collateral Attack*, BLACK'S LAW DICTIONARY 298 (9th ed. 2009)) (emphasis omitted)); *see also* 56 AM. JUR. 2D *Motions, Rules, and Orders* § 63 (May 2025 update) ("A 'collateral attack' is an attempt to avoid, defeat, evade, or deny the force and effect of a final order or judgment in an incidental proceeding other than by appeal, writ of error, certiorari, or motion for new trial.").

Accordingly, Li's motion implicates the 233-year-old separation-of-powers principle that Executive Branch officials cannot review and set aside the decisions of Article III courts.  *See Plaut*, 514 U.S. at 218 (stating that, under *Hayburn's Case*, 2 U.S. 409 (1792), "Congress cannot vest review of the decisions of Article III courts in officials of the Executive Branch."); *see also Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948)

---

[6] The majority is flatly wrong in contending that Li's ineffective assistance claim examines only "his *counsel's* performance" and not the Ninth Circuit's judgment.  *See* Opin. at 23.  Prejudice is an essential element of an ineffective assistance claim, including in the immigration context, *see Singh v. Holder*, 658 F.3d 879, 885 (9th Cir. 2011), and here Li experienced prejudice *only* because this court issued a judgment and mandate dismissing his petition for review.  Because Li's motion before the BIA sought to eliminate that prejudice by effectively nullifying that judgment, and to do so based on conduct occurring entirely within this court, it amounted to a collateral attack on this court's judgment.

("Judgments within the powers vested in courts by the Judiciary Article of the Constitution may not lawfully be revised, overturned or refused faith and credit by another Department of Government."). The BIA did not act unreasonably in declining to exercise its discretion to reopen in a way that would implicate such separation-of-powers concerns, and it therefore did not abuse its discretion in denying Li's motion.

The majority dismisses any separation-of-powers concerns, holding that the BIA's review of Li's ineffective assistance of counsel claim would not collaterally attack the Ninth Circuit's 2003 judgment "*because this court never addressed or adjudicated the merits of Li's claims*." *See* Opin. at 24 (emphasis added). The majority provides no support whatsoever for its conclusion that a collateral proceeding seeking to vitiate a judgment of dismissal for failure to prosecute does not count as a collateral challenge to a court judgment. That is not surprising, because there is no such authority; on the contrary, the majority's position flouts controlling Supreme Court precedent.

In *Plaut*, the Supreme Court addressed the separation-of-powers principles applicable to judicial final judgments in the context of a claimed *legislative* interference with such judgments. 514 U.S. at 213. Specifically, Congress in 1991 enacted § 27A of the Securities Exchange Act of 1934, which directed the courts, upon motion of the plaintiff, to reinstate any suit that was dismissed as time-barred under the Supreme Court's decision in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991), if the suit would not have been time-barred under the precedents applicable to that suit on the day before *Lampf* was decided. *See Plaut*, 514 U.S. at 214–15. The Court held that, by "retroactively commanding the federal courts to reopen final

judgments," § 27A violated "separation-of-powers" principles because it "depriv[ed] judicial judgments of the conclusive effect that they had when they were announced." *Id*. at 219, 228.

That general constitutional limitation against depriving judicial judgments of their conclusive effect, the Court explained, was clear from the reasoning of the long line of cases, beginning with *Hayburn's Case*, which established that "Congress cannot vest review of the decisions of Article III courts in officials of the Executive Branch." *Plaut*, 514 U.S. at 218; *see also id*. at 225–26. That is, although the "precise holdings" of the *Hayburn's Case* line of authority was "not strictly applicable" in *Plaut*—which did not involve *Executive Branch* review or revision of judicial judgments—the Court held that the logic of these cases established the broader principle that *neither* Congress nor the Executive Branch could require reopening of a final judicial judgment. *Id*. at 225–26. In particular, the Court pointed to its comment in *Chicago & Southern Air Lines* that "[j]udgments within the powers vested in courts by the Judiciary Article of the Constitution may not lawfully be revised, overturned or refused faith and credit by *another Department of Government*." *Id.* (quoting *Chicago & S. Air Lines*, 333 U.S. at 113 (emphasis added)). The Court likewise construed one of the opinions recounted in *Hayburn's Case* as establishing the broader proposition that "'[r]evision and control' of Article III judgments is 'radically inconsistent with the independence of that judicial power which is vested in the courts.'" *Id.* at 226 (quoting *Hayburn's Case*, 2 U.S. at 411 n.† (opinion of Wilson and Blair, Circuit Justices, and Peters, D.J., sitting as the Circuit Court for the District of Pennsylvania)). To the extent that judgments may be reopened, the *Plaut* Court stated, that

authority rests on the judiciary's "inherent and discretionary power, 'firmly established in English practice long before the foundation of our Republic,' to set aside a judgment whose enforcement would work inequity." *Id*. at 234 (citation omitted); *see also id*. (noting that Federal Rule of Civil Procedure 60(b) "embodies" this tradition).

Having established the broader proposition that final judicial judgments may not be subject to the revision or control of *either* the Executive Branch or Congress, *Plaut* proceeded to explicitly reject the argument that these constitutional limitations do not apply when the judgments at issue "rested on the bar of a statute of limitations." 514 U.S. at 228. As the Court explained:

> The rules of finality, both statutory and judge made, treat a dismissal on statute-of-limitations grounds the same way they treat a dismissal for failure to state a claim, for failure to prove substantive liability, *or for failure to prosecute*: as a judgment on the merits. See, *e.g.*, Fed. Rule Civ. Proc. 41(b); *United States v. Oppenheimer*, 242 U.S. 85, 87–88 (1916).

*Id.* (emphasis added). *Oppenheimer* held that a "judgment of acquittal on the ground of the statute of limitations" is a judgment on the merits, 242 U.S. at 87, and Rule 41(b) similarly states that, unless the court specifies otherwise, a dismissal for lack of prosecution "operates as an

adjudication on the merits," FED. R. CIV. P. 41(b).[7]  It follows that, under *Plaut*, the rule that neither the Executive Branch nor Congress may "depriv[e] judicial judgments of the conclusive effect that they had when they were announced" applies to a "dismissal . . . for failure to prosecute." *Plaut*, 514 U.S. at 228; *cf. also Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714 (9th Cir. 2001) (holding that a dismissal "based upon plaintiffs' failure to prosecute . . . operates as an adjudication upon the merits" and that, therefore, "involuntary dismissal generally acts as a judgment on the merits for the purposes of res judicata." (simplified)).

*Plaut*'s holding that the separation-of-powers principles protecting court judgments from executive or legislative reopening apply fully to a "dismissal . . . for failure to prosecute" flatly refutes the majority's contrary contention that the separation-of-powers principles applicable to court judgments do *not* apply to dismissals for failure to prosecute.[8]    As such, the majority's sole ground for

[7] Likewise, given that petitions for review may only be filed within a limited period of time, *see* 8 U.S.C. § 1252(b)(1), a dismissal of an already filed petition conclusively terminates proceedings in this court, subject only to our limited ability to reinstate proceedings to avoid manifest injustice. *See Meyers v. Birdsong*, 83 F.4th 1157, 1159–60 (9th Cir. 2023); *see also* 8 U.S.C. § 1252(b)(2)(C) (limiting reinstatement of cases dismissed for failure to file an opening brief to those in which "manifest injustice would result"); *cf. Plaut*, 514 U.S. at 234 (acknowledging the longstanding authority of a court "to set aside a judgment whose enforcement would work inequity").

[8] Nor does it matter that the court judgment dismissing Li's appeal for failure to prosecute was entered by the Clerk of Court "without judicial action" rather than by an Article III judge. *See* Opin. at 24–25.  The dismissal was expressly required by statute, *see* 8 U.S.C.

distinguishing those principles is meritless.[9] Accordingly, the BIA did not abuse its discretion in concluding that such separation-of-powers principles were at least *implicated* here. As explained earlier, the BIA did not need to find that granting Li's motion would *violate* separation-of-powers principles; it suffices that the BIA exercised its discretion by choosing to avoid having to decide such a constitutional question.

## B

The majority nonetheless contends that our precedent has already recognized the discretion of the BIA to invoke its reopen-and-reissue authority to nullify a Ninth Circuit dismissal like the one at issue here. *See* Opin. at 16–20, 25–

---

§ 1252(b)(3)(C) ("If an alien fails to file a brief within the time provided in this paragraph, the court shall dismiss the appeal unless a manifest injustice would result"), and the Clerk was explicitly authorized to enter the dismissal under this court's local rules, *see* NINTH CIR. R. 42-1 ("When an appellant fails to . . . file a timely brief, . . . an order may be entered by the clerk dismissing the appeal."). Under such circumstances, the dismissal was a ministerial act not requiring the participation of an Article III judge, and such a "dismissal of the case, entered by the clerk under authority of the rule of court aforesaid, was entitled to equal force and effect, within the purpose and intent of the rule, as a judgment of dismissal entered for similar reasons by the court itself." *Nealon v. Davis*, 18 F.2d 175, 176 (D.C. Cir. 1927). And nothing about the use of the phrase "without judicial action" suggests that the dismissal was thereby intended not to have conclusive effect. *See* Opin. at 25. Regardless of whether the dismissal was entered by the Clerk or an Article III judge, the same high standard of manifest injustice would have to be met for this court to set it aside. *See supra* n.7.

[9] I do not read the majority's opaque footnote eight as actually endorsing the frivolous proposition that this court's 2003 judgment of dismissal can somehow be viewed as resting on a "lack of jurisdiction." *See* Opin. at 25 n.8 (citation omitted).

27.  That is wrong.  We have previously held that the BIA
may—and in some cases must—reissue its decision when,
due to ineffective assistance of counsel *in failing to timely
file a petition for review*, the jurisdiction of this court was
not successfully invoked.  But we have never held that the
BIA has the authority, consistent with the separation of
powers, to adjudicate an alien's claim that an attorney's
ineffective assistance during a properly filed proceeding
pending in this court wrongly caused this court to dismiss
the alien's petition for review.

The distinction is illustrated by the primary case on
which the majority relies, *Dearinger ex rel. Volkova v. Reno*,
232 F.3d 1042 (9th Cir. 2000).  In *Dearinger*, Natalia
Volkova's request for asylum and withholding of removal
was denied by an immigration judge ("IJ"), and the BIA
affirmed that decision.  *Id*. at 1043–44.  Volkova's counsel
"filed a petition for review of the BIA decision in this court
one day late."  *Id*. at 1044.  Under the then-applicable well-
settled law, this failure to file a timely petition for review
was a jurisdictional defect that precluded this court from
ever acquiring jurisdiction over the matter.  *See Stone v. INS*,
514 U.S. 386, 405 (1995); *see also Magtanong v. Gonzales*,
494 F.3d 1190, 1191 (9th Cir. 2007).[10]  Rather than file a
motion to reopen with the BIA, two "next friends" of
Volkova "filed a petition for [a writ of] habeas corpus in the

---

[10] We recently concluded that a 2023 decision of the Supreme Court
abrogated this line of authority and that the deadline for filing a petition
for review is not jurisdictional.  *Alonso-Juarez v. Garland*, 80 F.4th
1039, 1043 (9th Cir. 2023) (citing *Santos-Zacaria v. Garland*, 598 U.S.
411 (2023)).  But the law at the time of our decision in *Dearinger* was to
the contrary, and that then-prevailing jurisdictional understanding of the
deadline therefore necessarily frames the scope of our analysis in
*Dearinger*.

district court," contending that her counsel had "provided ineffective assistance."[11] *Dearinger*, 232 F.3d at 1044. "The district court granted the petition and ordered" the reissuance of "the BIA's order denying the appeal" to permit the alien to seek review of the order by the court of appeals. *Id.*

On appeal from the district court, we concluded that counsel's failure to comply with the jurisdictional deadline for filing a petition for review was ineffective assistance that amounted to a violation of due process. *Dearinger*, 232 F.3d at 1045–46. Drawing on caselaw concerning the failure of counsel to follow a criminal defendant's instructions to file an appeal from a conviction and sentence, *see Roe v. Flores-Ortega*, 528 U.S. 470 (2000), we held that "where an alien is *prevented from filing an appeal* in an immigration proceeding due to counsel's error, the error deprives the alien of the appellate proceeding entirely." *Dearinger*, 232 F.3d at 1045 (emphasis added). We therefore concluded that, as in *Flores-Ortega*, the comparable error in Volkova's case warranted a "presumption of prejudice," because appellate "judicial proceedings" simply "never took place." *Id.* (citation omitted); *see also* Opin. at 18 (agreeing that the court in *Dearinger* "appl[ied] a 'presumption of prejudice' similar to the presumption applied in *Roe v. Flores-Ortega* under the Sixth Amendment" (citation omitted)).

As the *Dearinger* court's analogy to *Flores-Ortega* demonstrates, *Dearinger* placed dispositive weight on the failure even to *trigger* any judicial proceedings. The *Flores-*

---

[11] *Dearinger* was decided before Congress, in the REAL ID Act, precluded the use of habeas corpus jurisdiction in situations where judicial review is available directly through a petition for review from the BIA to a federal court of appeals. *See* 8 U.S.C. § 1252(a)(5); *see Iasu v. Smith*, 511 F.3d 881, 886–87 (9th Cir. 2007).

*Ortega* Court explained that its application of a presumption of prejudice in that case rested squarely on the fact that timely filing an appeal "is a purely ministerial task" that must be carried out in accordance with "the defendant's wishes." 528 U.S. at 477. The Court has made clear, however, that *Flores-Ortega*'s presumption does not apply beyond that specific context. *Flores-Ortega*'s limited holding reflects the "broader division of labor between defendants and their attorneys," because, "[w]hile 'the accused has the ultimate authority' to decide whether to 'take an appeal,' *the choice of what specific arguments to make within that appeal belongs to appellate counsel*." *Garza v. Idaho*, 586 U.S. 232, 240 (2019) (emphasis added). Indeed, in applying a presumption of prejudice to the failure to timely file an appeal in accordance with the defendant's instructions, *Flores-Ortega* contrasted that unique situation with deficiencies in "counsel's performance during the course of a legal proceeding, either at trial or on appeal," for which a showing of prejudice *is* required. 528 U.S. at 481–82. The Court noted that the latter category includes a "claim that counsel *neglected to file a merits brief on appeal*." *Id.* at 482 (emphasis added) (citing *Smith v. Robbins*, 528 U.S. 259 (2000)).[12] Thus, neither the facts nor the logic of *Dearinger* extends beyond the ministerial task of filing a petition for review, and *Dearinger* did not

---

[12] As *Smith* illustrates, the unique context of a criminal appeal also involves affirmative obligations of defense counsel to assess whether the appeal is frivolous before declining to file a merits brief. 528 U.S. at 264–65 (citing *Anders v. California*, 386 U.S. 738 (1967)). There is no counterpart to *Anders* in the immigration context.

consider, much less hold, that the same analysis would apply in the context of the failure to file an opening brief.[13]

Because, due to counsel's failure to carry out the ministerial task of filing a timely petition for review, no judicial proceeding was ever effectively initiated in *Dearinger*, that case did not present the sort of separation-of-powers concerns that gave the BIA pause here. *Dearinger* therefore provides no basis for concluding, as the majority does, *see* Opin. at 26–27, that the BIA *abused its discretion* in relying upon such concerns and that it was instead required to decide what is, in effect, a collateral attack on this court's order dismissing Li's properly initiated proceeding in this court.

The majority's reliance on *Lata v. INS*, 204 F.3d 1241 (9th Cir. 2000), is also unavailing. *Lata*, like this case, involved a timely filed petition for review that was subsequently "dismissed for lack of prosecution" when no

---

[13] A presumption of prejudice appears particularly inappropriate on the facts of this case, in which it is not clear that there were any colorable grounds that could have been raised in an opening brief in Li's case. Li had expressly conceded before the BIA that he had the burden of proof to establish that he was not inadmissible. Moreover, in finding that Li was inadmissible based on his having assisted aliens to enter the United States illegally, *see* 8 U.S.C. § 1182(a)(6)(E)(i), the IJ explained at considerable length why she deemed Li's testimony not to be credible and why she disbelieved the recantations of the aliens involved, who initially admitted that Li had supplied them with false documents. *See* Opin. at 6–7. Thus, in contrast to *Dearinger*, it is not clear that Li identified any "plausible grounds for relief." 232 F.3d at 1046 (citation omitted).

opening brief was filed.[14]  *Id*. at 1245.  But in contrast to this
case, the petitioner in *Lata* obtained relief from counsel's
error by successfully moving *in this court* for
"reinstatement" of her petition for review, which we then
decided on the merits.  *Id*.  Because, in *Lata*, the remedy for
the exact problem presented here *was obtained in this court*,
the facts did not present the separation-of-powers concerns
that the BIA identified in this case.  The majority notes that,
in dicta, *Lata* went on to suggest that the petitioner there
should first have exhausted her ineffective assistance claim
in the BIA, including by complying with the requirements of
*Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988).  *See Lata*,
204 F.3d at 1246; *see* Opin. at 9 n.1 (listing *Lozada*'s
requirements).  However, we ultimately concluded in *Lata*
that we did not need to decide whether the petitioner should
have complied with *Lozada*, because in any event the
petitioner could not show "a scintilla of prejudice" given that
her petition for review had been reinstated and decided fully
on the merits.  *Id*. at 1246.  *Lata* thus merely suggested that
the petitioner should have *presented* the claim to the BIA in
order to exhaust any possibly available administrative
remedies.    That exhaustion-based point does not say
anything about *how* the BIA should have disposed of such a

---

[14] *Lata* refers to the proceeding as an "appeal" that was initiated by a
"notice of appeal," but as Li correctly notes, the proceeding in *Lata* was
pursuant to a petition for review.  *See Ming Dai*, 593 U.S. at 366–67
(expressly rejecting the view that a petition-for-review proceeding is an
"appeal" as opposed to a "collateral review process Congress has
prescribed, initiating a new action in the federal courts").  In this dissent,
I have likewise colloquially used the term "appeal" to refer to the
proceedings on a petition for review, as the INA itself occasionally does.
*See*, *e.g.*, 8 U.S.C. § 1252(b)(3)(C).

claim had the BIA been presented with it. That is the question we face here, and *Lata* provides no answer to it.

For the same reasons, the majority's reliance on *Singh v. Napolitano*, 649 F.3d 899 (9th Cir. 2011) ("*R. Singh*"), is doubly unavailing. As made clear in the more complete description of the facts contained in the *R. Singh* dissent and the district court decision affirmed in that case, *R. Singh* is distinguishable because it involved a situation in which, like *Dearinger*, there was no timely filed petition for review. *Id.* at 903 (McKeown, J., dissenting); *see Singh v. Chertoff*, No. C-07-3943, 2007 WL 3010620, at *1 (N.D. Cal. Oct. 12, 2007). And to the extent that *R. Singh* held that such an ineffective assistance claim should first have been exhausted by presenting it to the BIA in a motion to reopen, that holding, like the dicta in *Lata*, says nothing about *how* the BIA should actually decide such a claim when presented with it.

Finally, the majority cites *Singh v. Holder*, 658 F.3d 879 (9th Cir. 2011) ("*H. Singh*"), but that decision is likewise inapposite. The ineffective assistance at issue in *H. Singh* involved counsel's failure to file a motion to reopen before the BIA and failure to seek an effective stay of the BIA's grant of voluntary departure (either through automatic tolling upon the filing of a motion to reopen in the BIA or by filing a motion for stay in this court). *Id.* at 885–86. Neither deficiency had any bearing on our ultimate decision to deny H. Singh's first petition for review, and accordingly, neither deficiency required the BIA to undertake a collateral review of a judgment or decision actually rendered by this court. Moreover, in *H. Singh*, our ultimate finding of prejudice was amply supported by the deficiencies of counsel that occurred before the BIA. *Id.* at 887 (remanding for the BIA to consider whether H. Singh's failure to depart was not

voluntary, in which case "he was clearly prejudiced by [his counsel's] failure to file [before the BIA] a motion to remand or motion to reopen after his marriage to a United States citizen"). Consequently, *H. Singh* did not involve a situation in which ineffective assistance of counsel *in this court* played a loadbearing, much less exclusive, role.

In sum, we have *never* held that the BIA has the authority to decide a collateral challenge to a judgment of this court or to grant relief that would effectively nullify such a judgment on the ground that the judgment was the product of ineffective assistance occurring entirely in this court. The BIA did not abuse its discretion in hesitating to cross that line based on separation-of-powers concerns.

## IV

Li also contends that the BIA erred by not explicitly addressing his separate request that his removal proceedings be reopened so that he could then be considered for adjustment of status based on his marriage to a U.S. citizen. Although the majority finds it unnecessary to reach this issue (because it grants the petition on other grounds), I must address whether it would provide an alternative ground for granting the petition. It does not.

Li correctly notes that we confirmed the BIA's authority to entertain such reopening requests in *Singh v. Holder*, 771 F.3d 647 (9th Cir. 2014) ("*T. Singh*"), but we rested that conclusion in *T. Singh* on the BIA's *sua sponte* authority to reopen. *Id*. at 652–53. Although we ultimately declined to decide the issue, we also noted that, because T. Singh's motion had been filed within the statutory 90-day time limit, it might also perhaps have been thought to fall within the statutory authority to grant a motion to reopen. *Id*. at 649, 651, 653. The same, however, cannot be said of Li's separate

request for reopening based on his marriage to a U.S. citizen: because (as I shall explain) Li established no basis for tolling the statutory deadline as to that alternative request, his motion seeking such relief was a non-statutory one that rested only on the BIA's unreviewable *sua sponte* authority.

Even assuming that Li's marriage to a U.S. citizen was a change in circumstances,[15] it provided no basis for equitably tolling the statutory 90-day deadline. Equitable tolling applies "when a petitioner is prevented from filing because of deception, fraud, or error, as long as the petitioner acts with due diligence in discovering the deception, fraud, or error," *Iturribarria v. INS*, 321 F.3d 889, 897 (9th Cir. 2003), and marriage to a U.S. citizen does not involve any such circumstances. Moreover, the statutory provision governing motions to reopen contains an express exception to the statutory deadline for changed circumstances, but the exception applies only when there are "changed *country conditions* arising in the country of nationality or the country to which removal has been ordered" and, even then, only with respect to an application for asylum or withholding of removal. 8 U.S.C. § 1229a(c)(7)(C)(ii) (emphasis added). We have consistently held that a motion to reopen that "'relies *solely* on a change in personal circumstances,' without also providing sufficient evidence of related changed country conditions," does not satisfy that statutory exception. *Rodriguez v. Garland*, 990 F.3d 1205, 1209 (9th Cir. 2021) (citation omitted).

---

[15] The assumption is doubtful because the IJ's 2001 ruling expressly stated that Li then had "indicated he had an adjustment of status application pending before the Immigration and Naturalization Service on the basis of a petition filed by a U.S. citizen spouse."

Accordingly, to the extent that Li's motion separately sought reopening based on his marriage so that he could pursue adjustment of status, his motion was in that respect not a statutory motion to reopen and was instead an appeal to the BIA's *sua sponte* reopening authority. Here, the BIA expressly stated that it considered "the totality of [the] circumstances" in declining to reopen Li's removal proceedings *sua sponte*, and I discern no legal or constitutional error in its handling of that issue. As such, I would conclude that we lack jurisdiction to review the BIA's substantive exercise of its discretion not to reopen *sua sponte*. *See Bonilla v. Lynch*, 840 F.3d 575, 588 (9th Cir. 2016).

## V

For the foregoing reasons, I would deny in part and dismiss in part Li's petition for review. Because the majority concludes otherwise, I respectfully dissent.